A. M. WALKER, Appellant, *vs.* WILLIAM P. LOVITT,
Appellee.

*Opinion filed June 20, 1911.*

1. CONTRACTS—*contract will be enforced according to its legal
effect where made or to be performed.* The validity, construction
and obligation of a contract must be determined by the law of the
place where it is made or is to be performed, and courts of an-
other jurisdiction will so enforce it.

2. SAME—*rule where contract for payment of money is silent as
to place of payment.* Where a contract for the payment of money
is silent as to the place of payment such place is presumed to be
the place where the contract was made, and the debtor must seek
the creditor at his domicile or place of business.

3. SAME—*place where contract is made is the place where it is
delivered.* The place where a contract is made depends not upon
where it is actually written, signed or dated, but upon the place
where it is delivered as consummating the bargain.

4. BILLS AND NOTES—*when a payee's residence is place' where
contract is made.* Where a note made by a citizen of Illinois is
delivered by his agent to the payee at her home in a foreign State,
and she then delivers a check to the agent for the amount of the
note, which is silent as to place of payment, the residence of the
payee is the place where the contract is consummated and payment
is to be made, and the question is not affected by the disposition
which the agent may have made of the money.

5. SAME—*validity of foreign contract not affected by fact that
mortgage is given on Illinois land.* Where a contract for the pay-
ment of money is to be performed in a foreign State, the validity
of such contract under the laws of the foreign State is not affected
by the fact that its performance is secured by a mortgage on Illi-
nois land, as the mortgage is but an incident of the agreement,
the legal fulfillment of which is the payment of the money.

6. SAME—*party suing on foreign note need not plead the inter-
est law of foreign State.* A party suing on a note made and to be
paid in a foreign State need not plead or prove the interest law of
such foreign State even though the note bears a higher rate of in-
terest than is allowed by law in Illinois, as the plaintiff is not re-
lying upon foreign law but upon the contract, and if the latter is
usurious the burden is upon the defendant to prove it so.

7. USURY—*object of various statutes relating to rate of inter-
est.* The object of the various Illinois statutes concerning the law-

ful rate of interest has not been to make void any contract which would be valid under the law of a foreign State, but to make valid against citizens of Illinois, and their property, contracts which might be invalid under the law of the State where made; and in so doing the legislature has not violated any constitutional limitation, as would be the case had it undertaken to invalidate legal contracts made in another State.

8. SAME—*legislature cannot prohibit making contracts outside the State which are valid where made.* The legislature of a State has no power to prohibit its citizens from making, beyond limits of the State, contracts which are lawful in the place where made, even though such contracts may concern property within the State.

9. SAME—*extent to which section 8 of the Interest act may be enforced.* Section 8 of the Interest act cannot, without violating constitutional rights, be applied except to cases where the rate of interest that may be charged by the law of the State or country where the contract is made is less than the rate that may lawfully be charged in this State.

10. SAME—*when a foreign note is not usurious.* A note made by a citizen of Illinois and payable at the home of the payee in a foreign State where the note was delivered, and which bears interest at the rate allowed by law in such foreign State, is not usurious; even though such rate exceeds the rate allowed by law in Illinois and the note is secured by a mortgage on Illinois land; and in case of suit in Illinois upon the note section 8 of the Interest act presents no defense.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

ANDERSON & MATTHEWS, for appellant.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

To an action on a promissory note the appellee set up the defense of usury as to all except a certain amount which was tendered to the plaintiff. The note, on its face, bore eight per cent interest, to be compounded annually if not paid annually. The note was dated Louisiana, Missouri, and was payable generally. The payee was a citizen and

resident of Missouri and the appellee a citizen and resident of Illinois. The rate of interest was lawful in Missouri. The note was secured by a mortgage on real estate in Illinois, and the appellee contends that by virtue of section 8 of chapter 74 of Hurd's Statutes of 1909 the interest contracted to be paid was forfeited. The circuit court sustained this contention, and the plaintiff has appealed from the judgment directly to this court on the ground that the constitutionality of the section mentioned is involved.

That section is as follows: "When any written contract, wherever payable, shall be made in this State, or between citizens or corporations of this State, or a citizen or corporation of this State and a citizen or corporation of any other State, territory or country, (or shall be secured by mortgage or trust deed on lands in this State,) such contract may bear any rate of interest allowed by law, to be taken or contracted for by persons or corporations in this State or which is or which may be allowed by law on any contract for money due or owing in this State: *Provided, however,* that such rate of interest shall not exceed seven per cent per annum. And if any such person or corporation shall contract to receive a greater rate of interest or discount than seven per cent, upon any such contract, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to recover the principal sum due to such person or corporation."

If the note was an Illinois contract it was usurious on its face, without reference to this section. If it was a Missouri contract it was enforcible in this State according to the stipulated rate though in excess of the rate allowed by our law, unless the interest was forfeited by the application of this section. (*Phinney* v. *Baldwin,* 16 Ill. 108; *Smith* v. *Whittaker,* 23 id. 367; *Morris* v. *Wibaux,* 159 id. 627; *Dearlove* v. *Edwards,* 166 id. 619.) The question of the

250 — 35

application of the section was preserved by propositions of law submitted to the court.

The rule is well settled that the validity, construction and obligation of a contract must be determined by the law of the place where it is made or is to be performed. The law of the place becomes a part of the contract, and the courts of another jurisdiction will enforce it in accordance with its legal effect where made or to be performed. (*Evans* v. *Anderson,* 78 Ill. 558; *Barnes* v. *Whittaker,* 22 id. 606; *Mumford* v. *Canty,* 50 id. 370; *Roundtree* v. *Baker,* 52 id. 241; *Coats* v. *Chicago, Rock Island and Pacific Railway Co.* 239 id. 154.) When a contract for the payment of money is silent on the subject, the place of payment is presumed to be the place of making and the debtor must seek the creditor at his domicile or place of business. (*Esmay* v. *Gorton,* 18 Ill. 483; *DeWolf* v. *Johnson,* 10 Wheat. 367.) The place where a contract is made depends not upon the place where it is actually written, signed or dated, but upon the place where it is delivered, as consummating the bargain. (*Gay* v. *Rainey,* 89 Ill. 221.) The note here was delivered by the agent of the appellee to the payee at her residence in Louisiana, Missouri, and she then delivered to such agent a check for the face of the note. The contract was thus consummated in Missouri and the note then took effect as the appellee's obligation to re-pay the money there where he had borrowed it. The disposition the appellee's agent may afterward have made of the money cannot affect the rights of the parties to the note.

The substance of section 8 above mentioned, omitting the clause referring to security on lands in this State, first appeared in our statutes in 1857. The conventional rate of interest in this State was then ten per cent, which was higher than the rate permissible in other States and countries from whose citizens and corporations the citizens of this State were accustomed to borrow money, secured by mortgages on land in this State. Under the laws of these

other States and countries various results followed a usurious contract, ranging from a forfeiture of the excess of interest to the complete avoidance of the contract. Where a contract or loan was made in this State, or between citizens of this State and citizens of such foreign State, and performance or payment was to be made in such foreign State, the contract or loan was governed by the law of such foreign State, and was valid or invalid as and to the extent determined by such foreign law. (*McAllister* v. *Smith,* 17 Ill. 328; *Adams* v. *Robertson,* 37 id. 45; *Andrews* v. *Pond,* 13 Pet. 65.) Thus, a note given in New York by a citizen of this State and payable there, bearing interest at a rate in excess of seven per cent, was void because so declared by the law of New York though in Illinois it was competent to contract for ten per cent. To meet this situation and enable citizens of this State to borrow money in other States whose usury laws were more stringent, and to give obligations and security for loans so made that should be legally binding and enforcible here against the borrowers and their property though not enforcible where made, the General Assembly passed two acts. One, which went into effect February 12, 1857, provided that when any contract or loan should be made in this State or between citizens of this State and any other State or country, bearing interest at a rate lawful in this State, it should be lawful to make the principal and interest of such contract or loan payable in any other State or territory of the United States or in the city of London, in England, and in all such cases the contract or loan should be governed by the laws of this State and not affected by the laws of the State or country where the same should be made payable, and that no contract or loan theretofore made bearing interest at a rate lawful in this State when such contract was made, should be invalidated or in anywise impaired or affected by reason of the same having been made payable in any other State or country. (Laws of 1857, p. 38.) At the same session

"an act for the encouragement and security of loans of money" was passed, which went into effect February 16, 1857, and provided that it should be lawful for any person or corporation borrowing money in this State to make notes, bonds, mortgages and other securities for the payment of principal or interest at the rate authorized by the laws of this State payable at any place where the parties might agree, though the legal rate of interest in such place might be less than in this State, and such securities should not be held to be usurious or invalidated because of the rate of interest at the place where the paper should be made payable being less than in this State or because of any usury or penal law in such place. It was further provided that no plea of usury or defense founded upon an allegation of usury should be sustained in any court of the State nor any security held invalid on an allegation of usury, where the rate of interest did not exceed that allowed by the laws of this State, because of such security being payable at a place where such rate of interest was not allowed. (Laws of 1857, p. 33.)

It was not the object of these acts to restrict the power of the citizen to contract for the payment of interest. They were enabling acts, and were intended to encourage the lending of money in the State by enabling its citizens to make a valid contract to re-pay the money in the State where it was borrowed, even though it was recognized that the contract would be void in that State. Their effect and intention were not to make void any contract which would be valid under the law of a foreign State, but to make valid against citizens of Illinois, and their property, contracts which under the law of the State where made would be void. They were therefore open to no constitutional objection. In *Fowler* v. *Equitable Trust Co.* 141 U. S. 384, they were enforced by the Supreme Court of the United States in a case where it was sought to interpose the defense that the contract of loan was a New York contract

payable in New York and was void under the usury laws of that State.

In the revision of 1874 these two statutes were repealed and a single section was enacted on the subject, as follows: "When any bond, bill, draft, acceptance, mortgage or other contract, shall have been or shall be made in this State, or between citizens of this State, or a citizen of this State and any other State, territory or country, bearing interest at a rate lawful by the laws of this State, may be made payable in any other State, territory or country, such contracts shall be governed by the laws of this State." (Rev. Stat. 1874, chap. 74, sec. 8.) In 1875 this section was amended so as to read precisely as it does now, except for immaterial verbal changes and the rate, which has since been reduced from ten to seven per cent. (Laws of 1875, p. 85.) The object of the legislature has always been the same,—to enable citizens to borrow money outside the State at the highest rate permitted by law within the State, and to give valid obligations therefor, though such obligations may be invalid by the law of the State where made. The legislature has power thus to make contracts otherwise invalid enforcible in this State, for in so doing it violates no constitutional limitation. If it is undertaken to invalidate legal contracts made in another State the case is different. Such action would deny to the parties to the contract the equal protection of the laws and abridge their privileges as citizens of the United States, and deprive them, without due process of law, of the liberty of making contracts outside the State in regard to their property. The legislature of a State has no power to prohibit its citizens from making, beyond the limits of the State, contracts lawful in the place where they are made, even though such contracts may concern property within the State. (*Allgeyer* v. *State of Louisiana,* 165 U. S. 578.) The validity of the contract here is in no way affected by the fact that its performance was secured by a mortgage of Illinois land. The mortgage was but an in-

cident of the agreement. "The mere taking of foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfillment of a contract of loan on the part of the borrower is re-payment of the money and the security given is but the means of securing what he has contracted for, which in the eye of the law is to pay where he borrows, unless another place of payment be expressly designated by the contract." (*DeWolf* v. *Johnson, supra; Coghlan* v. *South Carolina Railroad Co.* 142 U. S. 101; *Manhattan Life Ins. Co.* v. *Johnson,* 188 N. Y. 108; *Lockwood* v. *Mitchell,* 7 Ohio St. 387.) The section of the statute under consideration, without violating constitutional rights, can be applied only to cases where the rate of interest that may be charged by the law of the State or country where the contract is made is less than the rate that may lawfully be charged in this State.

A distinction is sought to be drawn by counsel for appellee between statutes which declare a usurious contract void and those which merely provide for a forfeiture of interest, but the difference is only one of degree and not of kind. No more authority exists for taking from an individual the benefit of a part of his contract than for taking all.

It is also insisted that the appellant did not plead the Missouri statute in regard to interest and therefore it was not properly admitted in evidence. It was not necessary for the appellant to aver or prove the law of Missouri. The burden of proving usury was on the defendant relying upon it as a defense. The appellant claimed a recovery not because of the law of Missouri but upon the contract, and if that was unlawful the burden of showing it was on the appellee. *Dearlove* v. *Edwards, supra; Smith* v. *Whittaker, supra.*

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*