PROVIDENT LIFE & TRUST CO. et al. v. FLETCHER et al.

(Circuit Court of Appeals, Second Circuit. May 14, 1919.)

No. 231.

1. USURY ⬅️37—PURCHASE OF CONTINGENT LEGACY.

A transaction by which a legatee 44 years old, who had been refused life insurance by various companies, assigned an interest in a legacy payable only in case he reached the age of 55 for less than one-tenth of legacy's amount *held* not usurious.

2. WILLS ⬅️743—ASSIGNMENT OF LEGACY—GROUNDS FOR EQUITABLE RELIEF —"CATCHING BARGAIN."

When a well-educated man 44 years old, with independent means, conveys his interest under a contingent legacy for a small fraction of the legacy's amount, the transaction will not be set aside as a "catching bargain," which merely describes that kind of fraud often perpetrated upon young, inexperienced, or ignorant people.

[Ed. Note.—For other definitions, see Words and Phrases, Catching Bargain.]

3. EXECUTORS AND ADMINISTRATORS ⬅️524(2)—SUIT IN FOREIGN JURISDICTION —FEDERAL COURTS.

Foreign executors, who have filed papers required by Code Civ. Proc. N. Y. § 1836a, may sue in a federal court in New York to recover funds of the estate.

4. EXECUTORS AND ADMINISTRATORS ⬅️524(2)—SUIT IN FOREIGN JURISDICTION —FILING LETTERS—NEW YORK STATUTE.

Code Civ. Proc. N. Y. § 1836a, requiring foreign executors to file copies of letters, is a condition subsequent to a suit, and may be complied with at such time as the court permits.

5. ASSIGNMENTS ⬅️43—EFFECT OF WRONG DATE—"FORGERY."

An assignment dated a year before it was actually made, through a clerical error which has done no harm, is not invalid as a forgery, since a "forgery" consists of the false making or material alteration of a writing which, if genuine, would be of legal effect, and doing so with intent to defraud.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

6. WILLS ⬅️743—ASSIGNMENT OF LEGACY—EFFECT ON PRIOR ASSIGNMENTS.

An absolute assignment of certain rights in a legacy under a specified item of a will did not extinguish rights previously secured through an assignment pledging an interest in legacy under another item of same will.

7. ASSIGNMENTS ⬅️46—RECORDING STATUTE—RETROACTIVE CONSTRUCTION.

The New York statute regulating the recording of assignments of interests in estates is not retroactive.

---

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Provident Life & Trust Company and Catherine Stewart Wood, as executors under the last will and testament of William Brewster Wood, deceased, against Austin B. Fletcher, as testamentary trustee of Conrad Morris Braker, under the last will and testament of Conrad Braker, Jr., deceased, and Conrad Morris Braker and Daniel P. Ritchey. Decree for complainants (237 Fed. 104), and defendants Braker and Ritchey appeal. Affirmed.

This action as originally brought by the Provident Company et al., as executors of Wood, was a suit to enforce an assignment of a contingent interest under the will of Conrad Braker, Jr., deceased. The parties defendant are the same as in Brown v. Fletcher, 253 Fed. 15, —— C. C. A. ——, here as there Fletcher the trustee is a mere stakeholder, and the basis of litigation is another of Conrad Morris Braker's transfers of contingencies under his father's will, in consideration of small cash payments. The decision appealed from is reported in 237 Fed. 104, and the statement of facts prefixed to Judge Learned Hand's opinion is adopted by this court.[1]

Subsequent, however, to the decision just cited, one Ritchey was permitted to intervene, and set up by cross-bill a claim arising as follows: On March 5, 1902, New York Finance Company borrowed from one Banes, trustee under the will of Banes, deceased, $5,000, and executed and delivered to said Banes its promissory note for that amount, bearing interest at 6 per cent. and due February 25, 1905, contemporaneously assigning as collateral to said note, and to said Banes, "all the estate, right, etc., of any kind, form, or description which the said New York Finance Company now has or hereafter may have in the estate of Conrad Braker, Jr., deceased," by virtue of Conrad Morris Braker's assignment of February 25, 1902, to said Finance Company. Thus Banes, trustee, had as security for his $5,000 note what, if Conrad Morris Braker lived long enough, would amount to $35,000, out of the sums coming to him under the fifteenth and sixteenth articles of his father's will.

On August 12, 1907, the Finance Company, "in consideration of a certain agreement dated July 2, 1907," between itself and Banes, trustee, transferred to said Banes absolutely all its right, title, and interest in the estate of Conrad Braker, Jr., deceased, "subject, however, to all existing and prior assignments thereof." The agreement of July 2, 1907, is not in evidence. By mesne assignments, not necessary to enumerate, Ritchey, the intervener, became the owner of whatever Banes, trustee, had by the transactions recited.

Subsequent to the loans to Finance Company, which are the basis for both Ritchey's and the Provident Company's demands, it became legal in New York to record in the office of the appropriate surrogate such transfers of shares in estates as those by Finance Company to Banes and Wood section 32, Personal Property Law (Consol. Laws, c. 41). Thereupon the owners for the time being of what are now the claims of both Ritchey and Provident Company recorded these conveyances, but both the Banes-Ritchey transfers (of 1902 and 1907) were recorded before either of the Wood-Provident Company transfers (of 1903 and 1912).

The intervener Ritchey also showed, or called to the attention of the court, that the "written assignment as collateral security" by Finance Company to Wood, accompanying the note of July 5, 1903, and transferring all Finance Company's "right arising by virtue of the assignment of Conrad Morris Braker of February 25, 1902" (237 Fed. at page 105), purported to be executed March 5, 1902, and was signed by one as president of Finance Company who was not such president on said March 5, but was so on September 18, 1903, when he acknowledged its execution.

On this record, Ritchey then joined with Provident Company in asserting that Finance Company's transaction with Braker on February 25, 1902, was

---

[1] The report in 237 Fed., on the ninth line from foot of page 105, contains a confusing typographical error. The date July 5, 1912, should read July 5, 1903.

not a loan, nor tainted with usury, and did render Finance Company absolute owner of Braker's expectations under the fifteenth and sixteenth articles of his father's will to the extent of $35,000; but he opposed Provident Company's claim to $15,000 and interest therefrom, and demanded the whole fund, with its accumulations pendente lite, because:

(1) The transfer accompanying the Wood note of July 5, 1903, is a "forgery."

(2) The absolute conveyance of 1912 to Wood extinguished the note and collateral assignment of 1903, and the Provident Company's claim must stand on the later transfer only; which

(3) Is inferior to the Banes transfers, because later in time of execution, as well as later in date of record; and the statute compels such assignments as these to rank in the order of recording, even though executed and delivered before enactment of the recording act.

Braker urged a defense, as against the plaintiff only, not appearing in Brown v. Fletcher, supra, viz. that plaintiffs were executors of Wood, appointed in the state of Pennsylvania, who had never obtained ancillary letters in New York, and did not comply with section 1836a, Code Civ. Proc. N. Y., until long after suit begun; i. e., at the trial below. The Code section in question permits foreign executors and administrators to sue in New York on producing and filing in the "office of the clerk of the court" a duly authenticated copy of their letters, "in default whereof, all proceedings * * * may be stayed until such duly authenticated copy of such letters shall be so filed."

The trial court overruled all Braker's defenses, and held that out of the whole $35,000 (and interest) arising under the fifteenth and sixteenth sections of the Braker will, Ritchey should be first paid the $5,000 Banes note and interest, then Provident Company et al. should receive the principal and interest of the $15,000 Wood note and interest, and the balance go to Ritchey. Both Braker and Ritchey appeal.

Safford A. Crummey, of New York City, for appellant Braker.

Davis, Donohue, Thompson & Deitz, of New York City (Robert L. Luce and Seward Davis, both of New York City, of counsel), for appellant Ritchey.

Miller, King, Lane & Trafford, of New York City (Perry D. Trafford, Wolcott G. Lane, and Orrin C. Isbell, all of New York City, of counsel), for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Using the word "usury" with reference to the statutes of New York, it disposes of Braker's major defense to refer to our decision in Brown v. Fletcher, supra. The present transaction shows no insurance procured at Braker's expense, nor any covenant on his part to pay at all events. This leaves the main inquiry one of fact, viz. whether Braker did in form absolutely sell and assign his expectancy, knowing what he did and intending to do it.

On this point it is of no importance whether he liked to sell, or preferred to borrow. Many an act is voluntary in the legal sense, although induced by unwelcome and distasteful circumstances. With the court below we find it amply proven that Braker did sell to Finance Company his expectancies under the fifteenth and sixteenth articles of his father's will, with full knowledge of what he was doing, and intending to do what he did. That he also contemporaneously intended to deny such willingness and knowledge, should he live to be 55 years old, is, we think, also proven, but is quite immaterial, except as a reflection upon Braker's character.

[2] There remains a renewed appeal to the doctrine of catching bargains. The material facts on this point do not differ from those in the Brown case, except that Braker was about a year older. This doctrine (in so far as it does not rest upon a desire to preserve to the heir the family estate) is but an aid to equity when endeavoring to apply what Justice Bradley called "a principle of law, as well as of natural justice," namely, that "greater consideration and care are due to persons known to be unable to take care of themselves than to those who are fully able to do so." Graffam v. Burgess, 117 U. S. 185, 6 Sup. Ct. 686, 29 L. Ed. 839.[2]

In so far as decisions have been based on judicial desire, confessed or obvious, to preserve and perpetuate family estates, we decline to follow the same, regarding such doctrine as wholly unsuited to our national spirit, and certainly unsupported by any ruling of our highest court.

It having been agreed for a long time that mere inadequacy of price is not enough to set aside the sale of an expectancy, the inquiry always is whether an unconscionable advantage was taken by or through means inequitable, even though legal. Thus "catching bargains" becomes no more than a phrase convenient to describe the kind of fraud often capable of perpetration upon the young, the inexperienced, or the absolutely ignorant. For a good example, see Hallett v. Collins, 10 How. 184, 13 L. Ed. 376. When such circumstances are proven, and it is insisted "that the proceedings were all conducted according to the forms of law," the comment of Justice Bradley (Graffam v. Burgess, supra) is always appropriate. He said:

"Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law."

But where, as here, the man who in due form sells that which may be much, in consideration of that which is very little, is upwards of 40 years old, of good education, well to do according to any reasonable standard of expenditure, and under no other coercion than that of his own bad habits, we are still agreed that to such a man the doctrine of catching bargains has no application, and neither by reason nor authority are we compelled to assist him in escaping from a predicament of his own creation.[3]

[3, 4] The point that these plaintiffs have not shown a right to sue as foreign executors under Code Civ. Proc. § 1836a, is without substance. The reason for a foreign executor's inability to sue is not that the court cannot hear him, but that he is officially confined to his own jurisdiction. When that disability is removed by the Legisla-

---

[2] The cases on this subject are, we think, all collated in 11 Corpus Juris, p. 32. See, also, the earlier view that the doctrine is one primarily for the benefit of "an heir expectant." Bouvier's Law Dictionary (12th Ed.) sub nom. "Catching Bargains."

[3] See the treatment of a not dissimilar transaction with a much younger man, per Justice (then Vice Chancellor) Pitney, in Dixon v. Bentley, 68 N. J. Eq. 124, 59 Atl. 1036. The purchasers were the same men who as New York Finance Company dealt with Braker.

ture, he may address any court sitting within the territorial area of legislative power. Thus the statute of New York in effect entitles these plaintiffs as nonresidents to sue in the courts of the United States. It was so held under similar circumstances in Beaumont v. Beaumont (C. C.) 144 Fed. 288. That the production and filing of the exemplification of letters required by the statute is a condition subsequent to suit, and may be complied with at such time as the court permits, was decided in respect of this particular statute in Lecouturier v. Ickelheimer et al. (D. C.) 205 Fed. 683, which decision we approve.

[5] In respect of Ritchey's effort to exclude Provident Company et al. from all participation in this fund, we are of opinion that the original transfer by way of collateral security to Wood, deceased, was not a "forgery." Counsel seems to use that word rather to indicate invalidity than to accuse of crime, and such invalidity rests wholly upon the admitted or proven fact that an instrument bearing date March 5, 1902, was neither created nor delivered until July 5, 1903. But a forgery (irrespective of any statute) consists essentially in the false making or material alteration of a writing which, if genuine, would be of legal efficacy, and of doing this with intent to defraud. We find as facts that there was no intent to defraud, and that nothing was falsely made. The erroneous date was no more than a draftsman's error, which has done no one any harm. Nor·did this document even purport to·minimize or interfere with any rights in or belonging to Banes at the date when it took effect, to wit, its delivery on July 5, 1903.

[6] The absolute conveyance to Wood's executors of 1912 did not, and did not purport to, extinguish the rights obtained by Wood through his note and the accompanying agreement of hypothecation. It attempted to make the executors absolute owners of any $20,000 that might accrue under the sixteenth article of the Braker will; but it did not in the least affect their position as pledgee in respect of the fifteenth article. The attempt was idle, because of the earlier assignment to Banes; but Ritchey surely cannot complain of that.[4]

Nor can it be held that Wood's executors unwittingly surrendered what they already had, in consideration of something of no worth after the transfer to Banes of 1907.

[7] The New York statute permitting and regulating recording of assignments of the interests in estates is not retroactive. Such is the general law; it was so held in respect of deeds in this state. Jackson

---

[4] The collateral assignment to Wood (erroneously dated March 5, 1902) begins with a recital to the effect that Braker had sold to the Finance Company his interest under the sixteenth article of the will to the extent of $20,000; and then in the habendum clause assigns to Wood all the "estate, right, title, and interest" of the Finance Company in the estate of Braker, deceased. In point of fact the Finance Company had an estate under the Braker will in respect of both the fifteenth and sixteenth articles thereof. The plaintiffs pleaded a right to be reimbursed out of the funds arising under both articles. As neither in pleading nor by argument has it been asserted that the conveyance by way of pledge was limited by the recital above mentioned, we do not advert to the point.

v. Chamberlin, 8 Wend. (N. Y.) 620. It follows that, the transfer by Braker to the Finance Company having been absolute and valid, the conveyances of parts thereof made before the existence of a recording act are enforceable in the order of time of making, and that the decree of the court below was substantially right. It is therefore affirmed, with one bill of costs to the appellees, to be assessed against both appellants.[5]

3. CRIMINAL LAW ⬤⟺844(1)—INSTRUCTIONS—EXCEPTIONS.
Exception to charge in criminal case must be specific, and not general.

4. CRIMINAL LAW ⬤⟺1048—ERRORS NOT RAISED BY EXCEPTION.
While plain error not raised by exception may be noticed on appeal, right to do so will not be exercised, unless it is evident that serious injustice will otherwise result.

5. CRIMINAL LAW ⬤⟺1056(1)—ERROR NOT RAISED BY EXCEPTION—INSTRUCTIONS.
Any error in an instruction in a conspiracy case, claimed to permit jury to consider unproven overt acts, does not authorize a reversal, in absence of an exception, where numerous overt acts were established by evidence.

6. CONSPIRACY ⬤⟺47—EVIDENCE—SUFFICIENCY.
Indirect evidence regarding defendant's participation in a conspiracy to defraud United States, by substituting inferior materials in army service hats, held to sustain a conviction.

7. CRIMINAL LAW ⬤⟺1159(2)—REVIEW—QUESTIONS OF FACT.
Where record in a criminal case contains sufficient evidence on part of prosecution to require submission to jury, any reasonable doubt raised by accused's evidence is solely for jury, and will not be re-examined by appellate court.

---

[5] As the fund in the trustee's hands is large enough to pay both the Banes and Wood notes, with interest, and leave a surplus to Ritchey, we leave unnoticed, as merely academic, the inquiry whether Ritchey, as Banes' assignee, could not be compelled to stand wholly upon his assignment of 1907, instead of his note plus the assignment of 1907. The court below regarded the 1907 instrument as of no effect at all for lack of consideration. It is certainly arguable that the Finance Company could give away what they owned absolutely, and that they in effect did so; but, as the fund is ample, the order of payment becomes immaterial.