Margaret DeKORWIN, etc., Plaintiff,

v.

The FIRST NATIONAL BANK OF CHICAGO, etc., et al., Defendants.

The FIRST NATIONAL BANK OF CHICAGO, as Trustee, etc., Petitioner,

v.

Marie Louise BRILL, Respondent-Appellee,

and

Frank Bloch et al., Respondents-Appellants.

No. 13992.

United States Court of Appeals Seventh Circuit.

June 6, 1963.

Bruce J. McWhirter, Roland D. Whitman, Clarence H. Ross, Chicago, Ill., Ross, Hardies & O'Keefe (formerly Ross, McGowan, Hardies & O'Keefe), Chicago, Ill., of counsel, for appellants.

Charles Rivers Aiken, Richard F. Watt, Chicago, Ill., for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Frank Bloch, David Tonkin, Corrado J. DeSantis, Angela DeSantis, Jerome D. Kass, Lita A. Kass, Carl H. Kline and Edyth R. Levy, respondents, have appealed from a decree of the district court, entered September 26, 1962. The court ordered that, there being no reason for delay, the decree be entered as a final judgment.

The court's decree was based upon the report of a master in chancery, which included findings of fact and conclusions of law.

This appeal concerns the validity and the nature of two assignments, made by Marie Louise Brill (then known as Marie Louis Tonella), of Santa Monica, California, appellee, on December 29, 1949 to Leonard P. Levy, hereinafter referred to as Levy, of Philadelphia, Pennsylvania, of parts of her ⅓₈th share of the right, title and interest in and to the income and principal of the estate of Otto Young, deceased,[1] payable at the death of Marie Julia Pratt out of the principal of the trust created by the will and codicil of said Otto Young, to the extent of $250,000 as to exhibit MAR-B and $100,000 as to exhibit MAR-C. Both assignments were executed by Brill in Santa Monica, California.

Each respondent claims a portion of the interest transferred under these assignments, by virtue of subassignments made to them by Levy.

From the evidence heard, the master in chancery determined that Brill's ⅓₈th share of the trust estate, when ascertained and ready for distribution, if she survived Mrs. Pratt, her mother, would approximate $1,400,000.

Brill's mother stopped her allowance in 1949 and she became destitute. She was referred to Samuel Cohen, described on his letterhead as the owner of "Allied Investment & Discount Corporation, in Philadelphia, Pa." Its business is trust estate financing and general financing. After making an assignment to Cohen of a $250,000 remainder interest, for which Cohen paid her $45,000, Brill made several similar assignments to Levy, including said MAR-B and MAR-C.

In this case Brill's counsel contends that Levy was guilty of fraud in procur-

1. The First National Bank of Chicago is joined as trustee thereof.

ing the execution of the assignments. The master did find fraud. However, we deem it unnecessary to decide whether fraud was proved. We note from the master's report that when the assignments were executed by her, in California, her attorney was present. The district court did not expressly find that fraud existed, although it approved the master's report and adopted its findings and conclusions.

1. In this case the district court has jurisdiction by virtue of the diversity of citizenship of the parties. DeKorwin v. First National Bank of Chicago, 7 Cir., 156 F.2d 858, 861 (1946).

■■ 2. The validity and the nature of the two assignments in question are governed by the law where they were made. DeKorwin v. First National Bank, 7 Cir., 275 F.2d 755, 760. That is California. In the courts of California the common law of England has been declared to be the rule of decision. In re Elizalde's Estate, 182 Cal. 427, 188 P. 560, 562 (1920).

■ 3. The master in chancery held the assignments invalid as sales under the Uniform Sales Act in effect in California, but the district court expressly refrained from basing its decree on that act. We prefer to take the position that the assignments were made to secure a loan, as also held by the master and the district court.

Our position is supported by the fact that Levy required Brill to furnish him with insurance upon her life. The insurance requirement by Levy on the life of Brill is substantially relevant to the test of whether the transaction was a loan or a sale. As was said in Provident Life & Trust Co. v. Fletcher, S.D.New York (1916), 237 F. 104, 108, by Judge Learned Hand:

"* * * the first question of law which arises is whether the transaction, without the security of any life insurance policies, was usurious. * * * The general test is whether the principal is put at any genuine hazard. * * * under all the possible circumstances, the principal must be repaid."

At 109 of 237 F., he added,

"* * * In all these cases, either in one way or another, the payment of principal was secured beyond any but colorable hazard."

This case was affirmed in 2 Cir., 258 F. 583 (1919). See also DeKorwin v. First National Bank, supra, 275 F.2d 761.

In citing both Provident Life and DeKorwin, we are referring to the common law as announced by New York courts.

Levy advanced $75,000 to her in return for assurance that he would collect $350,000 in the future, the actual date being dependent upon the length of life of the life tenant, Mrs. Pratt, who was seventy-two years old when Levy advanced the money in December, 1949. We thus see that Levy advanced Brill money, and Brill, using her remainder interest in the Otto Young Trust, undertook to secure for him a refund in kind, and, to guard against her own death before that of her mother, Levy required her to furnish him adequate life insurance at her own expense.[2]

We have carefully examined the evidence in the record and find that it proves clearly that Levy, before he would enter into the transactions in question with Brill, insisted that she at her expense make this provision to protect him against the possible termination of her remainder interest by her death prior to that of her mother. Thus, he not only used the cost of the insurance in reducing the amount which he paid her for the assignments, but she was prevailed upon to make an initial payment of $2,000 as premium on the insurance.

---

2. The assignee of Brill's brother, Graveraet Young Kaufman, in a similar transaction with assignee Rosen, in New York City, was more fortunate in his dealing because he avoided paying the premium on the insurance taken out on his life for the benefit of Rosen. DeKorwin v. First National Bank, supra.

The facts unerringly point to the conclusion that this transaction is a loan.

Respondents in their brief admit that, under California law, the determination of whether a transaction is a sale or a loan follows the same principle as we announced in In re Oakes, 267 F.2d 516 at 518 (1959), where we said:

" * * * If it is a sale, we are not concerned with the question of interest, and if it is a loan then we are required to determine whether the interest charged is usurious."

Respondents have cited several California decisions, only one of which involves facts having any similarity to those in the case at bar. It is Martyn v. Leslie, 137 Cal.App.2d 41, 290 P.2d 58 (1955). We shall not encumber this opinion with a recital of the complicated transactions involved in that case. Suffice it to say that no agreement to procure life insurance or any other kind of insurance was there involved. The word "insured" crept into the opinion, 290 P.2d at 66, where the court said:

"It is true that by means of the 'United Purchase Agreement' defendants insured themselves not only against loss, but of a profit. *However, they did not thereby exact any payment from the plaintiffs.* The plaintiffs were under no obligation to exercise their option, and there was no evidence that they were in anywise obligated to reimburse King or United if they purchased the 15 per cent interest. The evidence is all to the contrary." (Italics supplied.)

By way of contrast, in the case at bar the record is replete with evidence, including exhibits, answers of Levy to interrogatories, and his own testimony, as well as that of Brill, that the insurance on Brill's life, at her expense, *was exacted by Levy*, without which the transaction involving the assignments would not have been consummated by Levy. Martyn v. Leslie is not inconsistent with the result which we reach in this case.

4. Respondents point out that the maximum interest rate allowed by law in Illinois is 7%, Ill.Rev.Stat. ch. 74, §§ 4, 6, 8 (1961), while in California it is 10%, West's Cal. Const. Art. 20, § 22. They then contend that, inasmuch as the assignments were executed in California, which described Brill as "of Santa Monica, California" and that the corpus of the trust and the place of its administration are in Illinois, the resolution of the claim of usury requires a preliminary determination as to the applicable conflict of laws principles of the forum state, Illinois.

Brill agrees that the conflicts rule of Illinois controls.

In George v. Haas, 311 Ill. 382, 143 N.E. 54, plaintiff, George, sued in the municipal court of Chicago for the balance due on a promissory note which drew interest at 10%. Defendant Haas contended that no interest could be recovered because the rate of interest provided for was usurious. From a judgment for both principal and interest defendant appealed and the Appellate Court reversed. On further appeal, the Illinois Supreme Court stated, 311 Ill. at 385, 143 N.E.2d at 55:

" * * * If a contract is executed in one state, to be performed in another state or country, the law of the place where the contract is to be performed will determine its validity and the nature and extent of the obligation. If a contract is made in one state, to be performed in another, and the states are governed by different laws, the law of the place where the contract is to be performed will prevail over the law where the contract was entered into, and it will be enforced under the law of the place of performance. Parties are presumed to contract with reference to the law of the state where their contract is to be performed, and to be governed by such law, rather than the law of the state where the contract was entered into. This rule has been declared and applied in practically every variety of con-

tract, including bills of exchange, promissory notes, and checks drawn in another state payable in this. * * * "

While respondents rely on Walker v. Lovitt, 250 Ill. 543, 95 N.E. 631, and Oakes v. Chicago Fire Brick Co., 388 Ill. 474, 58 N.E.2d 460, we believe that the reliance is not well-founded. In Walker, the court, 250 Ill. at 546, 95 N.E. at 622, applied the principle that when a contract for the payment of money is silent on the subject, the place of payment is presumed to be the place of making. Subsequently the same court in Oakes explained Walker, 388 Ill. at 477, 58 N.E.2d at 462:

" * * * In the later case of Walker v. Lovitt, 250 Ill. 543, 95 N.E. 631, it was as definitely stated that the rule is well settled that the validity, construction and obligation of a contract must be determined by the law of the place where it is made or is to be performed. Clearly, that rule was applicable in that case because the note involved was executed and, by presumption, was payable in the same state. *No question of conflict of laws could, therefore, be directly involved.*" (Italics supplied.)

In Oakes, the court approved and followed its holding in the George case, supra.

We hold that the Illinois law on usury applies in this case.

5. By its final decree of September 26, 1962, the district court ordered that respondents, having received the sum of 42½¢ of each dollar in the face amount of their subassignments, were not entitled to any further payments out of Brill's share in the Otto Young Trust Estate, "the amounts these subassignees have received being sufficient fully to satisfy any and all valid claims by them arising from the assignments of December 29, 1949, and their subassignments thereunder. These subassignees' claims to additional sums or amounts based on the specified assignments and subassignments are without merit and are denied, and they are dismissed for want of equity."

An order of March 10, 1961, reflecting a partial settlement agreement between respondents and Brill, provided for the payment to each respondent, out of a deposit held by the court clerk, of a sum equal to 42½% of the *principal* amount of each respondent's claim, without prejudice to the rights of either party. Levy testified that a price of approximately 44¢ on the dollar for a share in the assignments in question was a fair price for subassignees to pay in January 1950 (when the subassignments were made by Levy). Respondents in their brief recognize that testimony and do not dispute it. The inference that they paid such an amount is irresistible.

We are satisfied, therefore, that, from substantial evidence in the record, together with the reasonable inferences to be drawn therefrom, the 42½¢ referred to in the district court's final decree finds almost precise support in the evidence and that the slight, apparent variance in amount does not justify our disturbing the decree upon that ground alone.

For these reasons, the decree from which this appeal has been taken is affirmed.

Decree affirmed.