Donald B. Jones and Beverly V. Jones v. Commissioner.
Jones v. Commissioner
Docket No. 94347.
United States Tax Court
T.C. Memo 1966-136; 1966 Tax Ct. Memo LEXIS 149; 25 T.C.M. (CCH) 701; T.C.M. (RIA) 66136; June 20, 1966
*149 Donald B. Jones, 774 Broad St., Newark, N.J., and Frank W. Hoak, for the petitioners. Donald H. Cuozzo, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1957 and 1959 in the amounts of $1,981.28 and $1,286.23, respectively. The sole issue is whether, and if so, to what extent, gain realized by petitioners upon the transfer of remainder interests in each of two trusts after the death of the life tenants but prior to distribution, constitutes ordinary income. After trial of the issues, this Court filed its Findings of Fact and Opinion on May 9, 1963, Donald B. Jones, 40 T.C. 249 (1963), and entered its decision under Rule 50 on June 27, 1963. Thereafter, petitioners appealed the decision of this Court to the United States Court of Appeals for the Third Circuit, which, on April 27, 1964, remanded the case to this Court "for further proceedings in accordance with the opinion of this Court." That opinion (filed April 7, 1964) Donald B. Jones and Beverly V. Jones v. Commissioner, 330 F. 2d 302 (C.A. 3, 1964), was per curiam *150 and read as follows: Taxpayer, inter alia, purchases remainder interests in trusts. In the two interests before us in this review, as is his practice, after the deaths of the life tenants but prior to the distribution of the estate remainders of the trusts, he transferred his interests therein. His motivation is to obtain capital gains treatment for income tax purposes. The Tax Court held that the taxpayer could not transmute gain which would be ordinary income to him into capital gain by the device of a sale, notwithstanding that the sale was the bona fide sale of a capital asset. The Commissioner argues for the sustaining of the decision on the theory that the taxpayer's gain upon the sales of the remainders represents an increase in value attributable to interest income, in the form of an interest discount in his original purchase price for the remainders. We are impressed with this and in connection therewith consider it necessary to remand the case to the Tax Court for further proceedings to determine what part, if any, of the gain received upon the taxpayer's sale of the remainders was in fact the realization of interest discount and, if the latter is established, to make an *151 allocation of the proceeds between its ordinary income and capital gain components. The decision will be vacated and the case remanded to the Tax Court for further proceedings in line with this opinion. Further proceedings were held on January 24, 1966, at which time a supplemental stipulation of facts and oral testimony were received in evidence. On the basis of this evidence we have made the following additional findings of fact, repeating only the portions of the original findings necessary to an understanding of the additional findings. Additional Findings of Fact The facts stipulated in the supplemental stipulation of facts are found accordingly. Petitioner on January 14, 1953, paid $3,500 to a dealer in estate interests of heirs and beneficiaries of trusts for the transfer to him of a $10,000 undivided interest of Mildred Heeney, contingent beneficiary of an interest in a trust of which Margaret B. Gardiner was the life tenant. Mildred Heeney was born on September 4, 1912, and was 40 years old on January 14, 1953. When petitioner purchased the interest in the Gardiner trust, he was not able to establish the exact age of Margaret B. Gardiner, the life tenant, but believed *152 that she was then somewhere between 65 and 75. Margaret B. Gardiner was aged 72 on January 14, 1953. Margaret B. Gardiner died on April 15, 1957. On June 10, 1957, petitioner transferred his $10,000 interest in the Gardiner trust to Walter Martin for the amount of $9,400. Martin is a college classmate of petitioner and is engaged in the insurance business in New York City. Martin and petitioner had lunch together two or three times a year. [1] Petitioner received payment from Martin of $1,000 by check and a promissory note for $8,400 bearing interest at 4 percent per annum. On August 5, 1954, petitioner paid to the same dealer in estate interests of heirs and beneficiaries of trusts, Harry Sanger, $3,000 for which Sanger assigned to petitioner a $10,000 interest in the Mosessohn trust, which Sanger had been assigned by the contingent remainderman, Boris M. Dayyan, *153 on July 19, 1954. In 1954 when petitioner purchased the interest in the Mosessohn trust, he was unable to establish the exact age of Manya L. Mosessohn, the life tenant, but believed her to be at that time somewhere in her "sixties." Manya L. Mosessohn was 68 years old on August 5, 1954. The contingent remainderman of the Mosessohn trust, Boris M. Dayyan, was born on November 4, 1907, and was 47 years old on August 5, 1954. Manya L. Mosessohn died on March 14, 1958. On June 25, 1959, petitioner assigned his interest in the Mosessohn trust to Martin for the sum of $10,000 which was paid by Martin to petitioner $1,000 by check and the balance by a promissory demand note in the face amount of $9,000 bearing interest at 6 percent per annum. Sanger, from whom petitioner acquired the remainder interests in the Gardiner trust and the Mosessohn trust, only buys remainder interests in trusts or estates where the life tenant is at least 60 years old. The transactions whereby Sanger acquired interests in the Gardiner and Mosessohn trusts, the transactions whereby a portion of Sanger's interest in the Gardiner trust and Sanger's interest in the Mosessohn trust was transferred to petitioner, *154 and the transactions whereby petitioner transferred these interests to Martin, were all in the form of sales. The document transferring to Sanger the interest in the Gardiner trust and the document transferring to him the interest in the Mosessohn trust, each specifically recited that the agreement was a sale and not an assignment as collateral security for a loan. Upon purchase of the remainder interest in the Gardiner trust and upon purchase of the remainder interest in the Mosessohn trust, Sanger obtained an ordinary life insurance policy on the life of the remainderman. He assigned the policies so obtained to petitioner. The amount of the life insurance policy in each instance exceeds the amount paid by petitioner to Sanger upon acquisition of the interest which Sanger transferred to him but was less than the dollar amount of the interest acquired in the trust. Petitioner reimbursed Sanger for the premiums paid on each of these insurance policies and subsequently paid the premiums thereon until each policy was surrendered after the death of the life beneficiary of the trust. Sanger has made no loan secured by a remainder interest since 1951. Petitioner has never made a loan *155 secured by an assignment of a remainder interest in a trust. Petitioner, at the time he purchased the interests in the Gardiner and Mosessohn trusts, took into consideration a number of factors in determining the amounts he was willing to pay for these interests. Among the factors he considered were the following: 1. His estimate of approximately when the life tenant would die. 2. Whether the remainderman whose interest he acquired would outlive the life tenant, and whether he should protect himself against the contingency of the remainderman predeceasing the life tenant by purchasing insurance on the life of the remainderman and paying the premiums on the policy. 3. The length of time after the death of the life tenant that would be likely to be required for actual distribution of the trust estate. In this connection petitioner gave consideration to the likelihood of there being some question as to the proper construction of the will or trust instrument establishing the trust or some contest of the validity of the assignment made by the remainderman. 4. Whether any prior assignments of interests had been made by the remaindermen. 5. The fact that he intended to sell the *156 remainder interest before distribution of the estate assets in order to comply with the sale or exchange provisions of the Internal Revenue Code and that he would have difficulty in selling the interest prior to a time when it was fairly certain that it would be collectible. 6. The fact that there was a limited market for resale of interests of a remainderman in a trust prior to the death of the life tenant. 7. The possibility that the purchasing power of the dollar might decrease between the time he acquired a portion of the remainderman's interest in the trust and the time of the death of the life tenant. Based on United States Life Table 38 as found in the United States Life Tables and Actuarial Tables from 1939 to 1941, published by the United States Department of Commerce, Bureau of Census, the life expectancy of a person aged 72 years is 8.96 years; of a person aged 40 years, 31.55 years; of a person aged 68 years, 11.03 years; and of a person aged 47 years, 25.67 years. On January 14, 1953, based upon these life expectancies, there was a 93.7 percent probability that Mildred Heeney, the contingent remainderman of the Gardiner trust, a portion of whose interest petitioner *157 acquired, would survive the death of Margaret B. Gardiner, the life tenant of the Gardiner trust. Based on these same tables, on August 5, 1954, the date of petitioner's purchase of the contingent remainder in the Mosessohn trust, there was an 85.8 percent probability that Boris M. Dayyan, the contingent remainderman of the Mosessohn trust whose interest petitioner purchased, would survive the death of Manya L. Mosessohn, the life tenant of that trust. Based on Publication No. 11 of the United States Treasury Department containing actuarial values of remainder interests for purposes of estate and gift tax valuations, the calculated value of a $10,000 portion of the remainder interest in the Gardiner trust on January 14, 1953, was $7,092.70, the value of this $10,000 remainder interest in that trust on April 15, 1957, was $7,511.90, the value on August 5, 1954, of the $10,000 remainder interest in the Mosessohn trust was $6,199.30 and the value of that interest in the Mosessohn trust on March 14, 1958, was $6,502.50. The elements comprising the valuations contained in Publication No. 11 of the United States Treasury Department include the ages of the life tenant and the remaindermen *158 and interest at 3 1/2 percent per annum. Opinion on Remand Petitioner's primary contention in this case is that since the transactions here involved were purchases and sales, no portion of the amount he received upon the sale of these interests to Martin was "in fact the realization of interest discount." Petitioner contends that in order for there to be interest discount, there must be a loan in which a debtor-creditor relationship is created. Petitioner refers to such cases as United States v. Midland-Ross Corp., 381 U.S. 54 (1965); Nassau Lens Co. v. Commissioner, 308 F. 2d 39 (C.A. 2, 1962), remanding 35 T.C. 268 (1960); Lubin v. Commissioner, 335 F. 2d 209 (C.A. 2, 1964), reversing a Memorandum Opinion of this Court, and numerous cases involving determinations of whether in substance certain documents or transactions created a debt so that a debtor-creditor relationship existed between the parties. Petitioner contends that these cases, whether involving interest discount or ordinary interest, require a debtor-creditor relationship consisting of an unqualified obligation to pay a sum certain at a fixed maturity date to *159 exist before an amount is recognized to be a payment or receipt of interest. Petitioner states that since no debtor-creditor relationship was created upon his purchase of the remainder interests here involved, no portion of the amount he received upon the sale of these interests is properly allocable to interest. Respondent, pointing to the cases of DeKorwin v. First National Bank of Chicago, 170 F. Supp. 112 (N.D., Ill., 1958), affd. 275 F. 2d 755 (C.A. 7, 1960); and DeKorwin v. First National Bank of Chicago, 318 F. 2d 176 (C.A. 7, 1963), states that there is authority to the effect that the relationship between the remainderman and petitioner was one of debtor-creditor, but follows this comment in his reply brief with the following: Respondent, however, does not so contend in this case. The ordinary income portion of taxpayer's gain does not take its character as an interest equivalent from a transaction between borrower and lender but by reason of the purchase of a remainder interest at discount, which will return a specific amount after a period ascertainable by reference to the life expectancy of the life tenant. The difference between *160 cost and average expected return is economically like discount interest representing the right to receive property at an ascertainable future date, in exchange for the present payment of a smaller sum. Respondent relies on such cases as Roff v. Commissioner, 304 F. 2d 450 (C.A. 3, 1962), affirming 36 T.C. 818 (1961); Jaglom v. Commissioner, 303 F. 2d 847 (C.A. 2, 1962), affirming 36 T.C. 126 (1961); Rosen v. United States, 288 F. 2d 658 (C.A. 3, 1961); Phillips v. Commissioner, 275 F. 2d 33 (C.A. 4, 1960); and Tunnell v. United States, 259 F. 2d 916 (C.A. 3, 1958). No one of the cases relied on by respondent involved facts similar to those in the instant case. Roff v. Commissioner, supra, and Phillips v. Commissioner, supra, involved sales by the taxpayer shortly before maturity date of contracts for life insurance or annuity which had been obtained from an insurance company. The contracts referred to the interest accumulations. Jaglom v. Commissioner, supra, involved the "flat" sale of defaulted bonds on which interest had accrued while they *161 were held by the taxpayers there involved. Tunnell v. United States, supra, involved the sale of a taxpayer's interest in a law partnership and held that the amount allocable to accounts receivable at the time of sale was taxable as ordinary income under the provisions of the Internal Revenue Code of 1939. In In re Bechtold's Estate, 159 Misc. 725, 289 N. Y. Supp. 838 (Surrogate's Court, Clinton County, 1936), an extended analysis is made of cases involving the question of whether the acquisition of a contingent remainder by an assignment that is in form a sale is in substance a usurious loan. Many of these same cases are cited in the case of DeKorwin v. First National Bank of Chicago, 170 F. Supp. 112, affd. 275 F. 2d 755 (C.A. 7, 1960). This analysis shows that under certain circumstances, a transaction in form a sale will be held to be a usurious loan, but that the form will be upheld unless circumstances are proved to show that it was in substance a usurious loan. The import of the cases discussed in In re Bechtold's Estate, supra, is that *162 in the absence of any fraud being practiced on an assignor, a transaction in the form of a sale will be upheld as a sale even though the amount paid plus 6 percent interest (the legal rate in New York) to the date of the life expectancy of the life tenant is substantially less than the dollar value of the interest assigned if the assignee assumes some risk of loss. Some of the elements considered are whether the interest assigned is contingent, and, if contingent on the life tenant predeceasing the remainderman, whether the assignor is required to take out insurance on his own life or the assignee requires no insurance or procures the insurance at his own expense. Another factor considered is whether security other than an assignment of the interest is required of the assignor. From a consideration of factors enumerated in the New York cases and the DeKorwin cases, we conclude that there is no evidence in the instant case to establish that the assignments which petitioner purchased were in substance loans. The remainders acquired were contingent remainders and insurance on the remaindermen's lives was taken out by the purchaser at his own expense. However, a different problem is *163 involved in determining whether a debtor-creditor relationship exists for the purpose of requiring an amount to be included in a taxpayer's income as interest or permitting a deduction to a taxpayer for an interest payment for the purpose of Federal income tax than is involved in determining whether a transaction constitutes a loan under State law. The mere fact that under New York law the transactions here involved would not be considered as usurious loans would not be sufficient to conclude that they were not in substance loans for Federal income tax purposes. Numerous cases have been decided by this Court involving the elements to be considered in determining whether a transaction is sufficiently in the nature of a loan for income tax purposes to say that an amount representing interest thereon should be included in a taxpayer's income. In Judson Mills, 11 T.C. 25 (1948), we concluded that a portion of payments made under contracts purporting to be payments for rental of machinery constituted interest, where we held that the substance of the transaction was a purchase and not a rental of the machinery. In so holding, we stated that the contracts were silent as to interest *164 but from other evidence determined that an interest element was in fact involved. Once we had concluded in that case that the transaction constituted a sale, the conclusion that the monthly payments constituted a part of the sales price for which the taxpayer there involved was indebted to his vendor followed, so there was no real question of the existence of a debtor-creditor relationship but merely whether an amount of interest could be considered to be paid when the contract was silent with respect to interest. Somewhat the same problem was involved in the recent case of Estate of Betty Berry, 43 T.C. 723 (1965), on appeal (C.A. 6, July 15, 1965). In other instances we have considered specifically the question of whether a debtor-creditor relationship was created so that amounts paid or accrued did represent interest. In considering whether a debtor-creditor relationship existed, one of the items which generally has been considered is whether there existed an unqualified obligation to pay a definite sum at a reasonably fixed maturity date at a determined percentage which was payable irrespective of the income or lack thereof of the obligor. Farley Realty Corporation v. Commissioner, 279 F. 2d 701 *165 (C.A. 2, 1960), affirming a Memorandum Opinion of this Court. In the instant case there was no obligation of the assignor of the contingent remainder interest to repay any amount to petitioner. Any amount petitioner was to receive was to be from the remainderman's interest in a trust estate. The date when the amount would be paid was uncertain and reasonably ascertainable only by reference to the life expectancy of the life tenant. The same sum was to be paid whether the life tenant died immediately after the assignment by the contingent remainderman, a few years thereafter, or a considerable period of time after her actuarial life expectancy. The sum to be paid was fixed, except for certain contingencies. One of these was the remainderman predeceasing the life tenant, in which event only the amount of insurance taken by petitioner on the remainderman's life would be received. Another was that there might be insufficient assets in the trust estate at the date of the death of the life tenant for the portion thereof to be distributed to the remainderman, a part of whose interest petitioner acquired, to be sufficient to discharge prior assignments and the assignment to petitioner. *166 Were the matter before us initially, we would be inclined toward the view that the hazard of the date on which payment would be received and whether the entire amount would be paid would sufficiently distinguish the transaction here from a debtor-creditor relationship to cause no portion of the payments to be in fact interest payments. We do not base our decision on this ground since in our view the opinion of the Circuit Court did not leave this issue open for our decision. The evidence showing the nature of the transactions was introduced at the original trial and was before the Circuit Court when it rendered its opinion in which it stated that it was impressed with respondent's argument that a portion of the gains upon the sales of the remainders represented increase in value attributable to income in the form of an interest discount in the original purchase price of the remainder interest. We interpret this as a holding that the nature of the transaction here involved was such that a portion of the gain should be considered as interest if it had the nature of interest in serving the same function as discount interest. *167 Discount interest represents consideration for the fact that money has been paid over to another and will not be returned to the payor until some future date. This element is involved in the instant case since petitioner paid out money not expecting to be reimbursed therefor until some future date. Therefore, a part of the differential in price between the amount paid for each remainder interest and the dollar amount of that remainder interest assigned was to compensate for the passage of this period of time when petitioner forbore the use of his money. Viewed in this light, we consider that the evidence here does show that a part "of the gain received" upon petitioner's "sale of the remainders was in fact the realization of interest discount" and that we must determine from the evidence a method of allocation of the proceeds between this portion, which will represent ordinary income, and the other elements involved in the difference between the amount petitioner paid for the remainder interest and the amount received therefor, which will constitute "the capital gain components." Petitioner's testimony is that the first factor he took into consideration in determining the price *168 he would pay for a remainder interest was "approximately when would the life tenant die." Since the time at which petitioner would obtain the money from the portion of the remainder interest he purchased was governed largely by the date of death of the life tenant, this testimony shows that a major consideration in the amount petitioner was willing to pay for a remainder interest was how long before he could expect the return of his money. This factor is an interest factor. Respondent argues that the only portion of the amount received by petitioner upon the sale of the two remainder interests that should be allocated to anything other than discount interest is the difference in the face amount of the contingent remainder purchased and its average expected return computed in accordance with the life expectancies of the life beneficiaries and remaindermen, which in the case of the interest in the Gardiner trust is $630 and in the case of the Mossessohn trust is $1,420. Respondent states that this represents the risk involved in the probability that the remainderman would fail to survive the life tenant. It is respondent's position that this is the only risk involved. Petitioner, *169 in answer to this, points to other elements of uncertainty and indeed the possibility of other uncertain elements existing is borne out in the litigation of the two cases of DeKorwin v. First National Bank of Chicago, supra.See also William Korn et al., Executors, 35 B.T.A. 1071, 1078, 1079 (1937) for a discussion of risks involved in purchase of contingent remainder interests. Petitioner, referring to the recent case of Ted Bolnick, 44 T.C. 245 (1965), contends that even if there were an element of discount interest in the transactions here in issue, it should not be taxable as ordinary income. In Ted Bolnick, supra, we held gain realized by a taxpayer on redemption at face amount of debentures prior to their maturity, which debentures had been issued at an original discount, was taxable as ordinary income only to the extent of the amount of the discount allocable to the period prior to the date of the redemption. In so holding we stated that there was no specific intent on the part of the issuers at the date of the issuance to redeem the debentures prior to the date of maturity. We concluded that *170 "except to the extent of that portion of the amount received on redemption which is properly attributable to something other than the debentures themselves," section 1232(a)(1) of the Internal Revenue Code of 1954 "requires that it be considered as received in exchange for the debentures and hence is taxable as capital gain." In so holding we stated (p. 256): * * * we do not believe the portion of the discount that was unearned at the date of redemption served the same function as interest, or represented "income items or accretions to the value of the capital asset themselves properly attributable to income." See United States v. Midland-Ross, supra.[381 U.S. 54 (1965)]. The entire amount of the discount was not intended or understood to be compensation for the use of the money paid in for the debentures for the shortened period of time. The instant case involves a factual situation different from that in Ted Bolnick, supra, just as it involves a factual situation different from the various cases relied on by respondent. However, had the amount which petitioner *171 paid for the remainder interests he purchased in fact been a loan, interest discount would have been computed for a time not less than the life expectancy of the life tenant. It is reasonable to assume that the rate used in computing this discount for the use of money as distinguished from other hazards would be 6 percent. We, therefore, conclude that the interest discount element in the transactions involved in these cases is 6 percent per annum in each instance on the amount paid by petitioner for the remainder interest for the period of the life expectancy of the life tenant. The next question raised is whether this entire amount should be allocated to the portion of petitioner's gain on the sale of the remainder interests which represents its "ordinary income" component. As petitioner points out, there are other situations such as the purchase of second trust notes (see Morton Liftin, 36 T.C. 909 (1961), affd. 317 F. 2d 234 (C.A. 4, 1963)), where the highly speculative nature of the security caused its purchase to be at a substantial discount. Petitioner has not called our attention to any case of this nature that dealt with the taxability of an amount *172 received upon the resale of such security. In the Liftin case, the taxpayer, once he had received sufficient payments under the second trust notes that he purchased to return his investment, was reporting the balance of the payments as ordinary income. The case did not involve a resale by the taxpayer of the notes. Had there been a sale by such taxpayer of the notes instead of collection thereon, a different question would have existed. However, the portion of the amount which we have determined to be an interest discount equivalent which would have been unearned at the date of sale of the remainder interests, which was prior to the expiration of the life expectancy of the life tenants, would not serve the function of interest. Cf. Ted Bolnick, supra.Had the transactions in fact been loans, the unearned interest at the date of payment of the loans would probably have been refundable. Therefore, under the facts here and the reasoning in Ted Bolnick, supra, we conclude that the portion of the equivalent of discount interest, the computation of which we have set forth above, which represents ordinary income to petitioner is that portion which on a passage *173 of time basis would have been earned at the date of the sale by petitioner of the remainder interests. The balance of petitioner's gains on these sales constitutes capital gain. Decision will be entered under Rule 50. Footnotes
1. At page 256 in the findings of fact and opinion reported at 40 T.C. 249↩, the reference is inadvertently made to petitioner and Martin having lunch together two or three times each week. However, the stipulation filed at the original trial states that they had lunch together two or three times each year.