Donald ROERING, as trustee for the
heirs of Randy Donald Roering,
decedent, Appellant,

v.

GRINNELL MUTUAL REINSURANCE
COMPANY, Respondent.

No. Cl–88–2213.

Supreme Court of Minnesota.

Sept. 1, 1989.

Michael Fargione, Haver, Lewis & Fargione, P.A., Minneapolis, for appellant.

Kay Nord Hunt, V. Owen Nelson, Kathryn H. Davis, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

POPOVICH, Chief Justice.

Pursuant to Minn.Stat. § 480.061 (1988) the Honorable Edward J. Devitt, of the United States District Court, District of Minnesota, Sixth Division, certified the following questions to this court after denying a motion to dismiss:

1. Does Minn.Stat. § 65B.49, subd. 3a(7), preclude underinsured motorist coverage where the motorcycle is an insured vehicle but not for uninsured/underinsured motorist coverage?

2. Pursuant to Minn.Stat. § 65B.49, subd. 3a(5), when a person is injured while operating his own motorcycle which is insured for liability coverage only, is he considered to be "occupying a motor vehicle" for purposes of claims to underinsured motorist benefits?

3. May an insurer enforce an exclusion in its policy of insurance which provides that underinsured motorist coverage does not apply to bodily injury sustained by a person "while occupying a motor vehicle owned by you or a relative for which insurance is not afforded under this part, or when struck by the motor vehicle"?

I.

In its order of October 20, 1988, the federal district court set forth the following facts giving rise to the certified questions:

On September 9, 1986, Randy Donald Roering was involved in a collision with a motor vehicle operated by Kenneth Proell. Randy Roering was operating a motorcycle he owned and was killed as a result of the collision. The motorcycle, which was owned and operated by Randy Roering, was insured through a policy of insurance issued by Foremost Insurance Company. This policy did not provide uninsured/underinsured motorist coverage.

On the date of the accident, Donald Roering, the deceased's father, was insured by respondent Grinnell Mutual Reinsurance Company. Randy Roering was a member of Donald Roering's household on September 9, 1986. The Grinnell policy of insurance contained underinsured motorist coverage in the amount of $50,000. The vehicles for which insurance was afforded under Grinnell's policy issued to Donald Roering were a 1977 GMC pickup truck and a 1979 Chevrolet Caprice.

Donald Roering submitted a claim to Grinnell Mutual for underinsured motorist benefits to cover the accident of September 9, 1986, when his son was riding the motorcycle. Grinnell denied coverage, pursuant to the exclusions portion of Donald Roering's policy governing uninsured/underinsured motorist coverage. The policy states:

This coverage [uninsured motorist/underinsured motorist] does not apply to bodily injury sustained by a person:

(1) while *occupying* a *motor vehicle* owned by *you or a relative* for which insurance is not afforded under this part, or when struck by the *motor vehicle*.

(Emphasis in original).

Donald Roering, as trustee for the heirs of Randy Donald Roering, decedent, brought this action seeking a declaration by the federal district court, pursuant to 28 U.S.C. § 2201 (1982), establishing the rights and obligations of the parties under Minnesota law and the insurance policy issued by Grinnell Mutual Reinsurance Company.

II.

*Minn.Stat. § 65B.49, subd. 3a(7)*

■ Respondent argues that underinsured motorist coverage under the Grinnell policy is precluded by Minn.Stat. § 65B.49,

subd. 3a(7). The statute provides in pertinent part:

> (7) The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.

Under subdivision 3a(7), an insured operating a motor vehicle owned by the insured, but not covered by insurance, is precluded from obtaining uninsured or underinsured motorist coverage under a policy issued on another car for which he is insured. This policy is designed to encourage motor vehicle owners to secure insurance on all of their vehicles. *See Balderrama v. Milbank Mutual Ins. Co.*, 324 N.W.2d 355, 358 (Minn.1982).

Appellant argues that Randy Roering was occupying an "insured motor vehicle" at the time of his accident and therefore is eligible to receive uninsured and underinsured motorist coverage under his father, Donald Roering's, policy. Randy Roering purchased the necessary level of coverage required by Minn.Stat. § 65B.48, subd. 5 (1988), the Minnesota statute governing insurance for motorcycles.[1] The insurance policy on his motorcycle contained only liability coverage and did not have any provision for underinsured motorist coverage, since such coverage is not required for motorcycles in Minnesota.

In *Hanson v. American Family Mutual Ins. Co.*, 417 N.W.2d 94 (Minn.1987), we interpreted the language of Minn.Stat. § 65B.49, subd. 3a(7). The plaintiff Thomas Hanson was injured when an uninsured jeep struck the uninsured motorcycle he was operating. In addition to the motorcycle, Hanson owned a 1974 Ford pickup truck at the time of the accident. The truck was insured by defendant American Family under a policy that included uninsured motorist coverage in the amount of $25,000 per person. Hanson filed a claim under the policy on his pickup truck, alleging that coverage extended to an accident that occurred while he was operating his motorcycle. We denied coverage to Hanson based on our reading of the intent of the legislature in enacting subdivision 3a(7) under the 1985 amendments to the No-Fault Act:

> The amendments also designated the occupied motor vehicle as the primary source of uninsured or underinsured motorist coverage, and otherwise limited the occupant's ability to collect additional like coverage. Minn.Stat. § 65B.49, subd. 3a(5). The legislature hoped, by these changes, to stem rising insurance costs, which it traced in part to prior law requiring expansive interpretation of vehicle insurance coverage. Allowing a claimant to extend uninsured motorist coverage from an automobile to an owned but uninsured motorcycle runs counter to the thrust of the 1985 legislation.

*Id.* at 96 (citation omitted).

This case differs from *Hanson* since Roering's motorcycle was fully insured under the law. Judge Devitt reached the same conclusion in denying respondent's motion to dismiss:

> Section 65B.49, subd. 3a(7), as construed in Hanson, does not preclude coverage in this case because here the motorcycle was insured, not uninsured. Following the *Hanson* court's lead, this court looks to the definition of "uninsured motor vehicle" in § 65B.43, subd. 16, for guidance in construing "insured motor vehicle" in § 65B.49, subd. 3a(7). From that definition, the court concludes that decedent's motorcycle was an "insured motor vehicle" for purposes of subd. 3a(7) because it carried the mandatory coverage required by the Act. Subdivision 3a(7) does not preclude coverage where "the

---

1. Minn.Stat. § 65B.48, subd. 5 provides:

    Subd. 5. Every owner of a motorcycle registered or required to be registered in this state or operated in this state by the owner or with the owner's permission shall provide and maintain security for the payment of tort liabilities arising out of the maintenance or use of the motorcycle in this state. Security may be provided by a contract of liability insurance complying with section 65B.49, subdivision 3, or by qualifying as a self insurer in the manner provided in subdivision 3.

occupied vehicle is an insured motor vehicle."

Since Roering carried the necessary amount of insurance required under the law, his motorcycle qualifies as an "insured motor vehicle" under subdivision 3a(7).[2] We agree with the federal district court and answer the first certified question in the negative.

### III.

*Minn.Stat. § 65B.49, subd. 3a(5)*

■ Minn.Stat. § 65B.49, subd. 3a(5) provides:

(5) If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

If at the time of the accident the injured person is not occupying a motor vehicle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

This subdivision provides different levels of coverage for an injured person based on whether he was "occupying a motor vehicle" at the time of the accident. If the injured person is occupying a motor vehicle under the policy of which he is an insured,

his limit of liability for uninsured and underinsured motorist coverage is the limit specified for that particular motor vehicle. If the injured person is not occupying a motor vehicle, he is entitled to select any one limit of liability afforded by another policy under which he is insured.

Appellant argues that Roering was not "occupying a motor vehicle" at the time of his accident since a motorcycle is not a "motor vehicle" under this statute. Minn. Stat. § 65B.43 (1988) sets forth three definitions involving the term "motor vehicle":

Subd. 2. "Motor vehicle" means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.

\*   \*   \*   \*   \*   \*

Subd. 16. "Uninsured motor vehicle" means a motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect.

Subd. 17. "Underinsured motor vehicle" means a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages.

Motorcycles are excluded from the general definition of "motor vehicle" in subdivision 2, but are considered motor vehicles when the motorcycle is uninsured or underinsured as defined in subdivisions 16 and 17.

In past cases we have held that motorcycles are motor vehicles when the motorcycle involved in the accident was either uninsured or underinsured. *See Hanson v. American Family Mutual Ins. Co.,* 417

---

**2.** The dissent relies on 1974 legislative history to interpret the meaning of "insured" status under Minn.Stat. § 65B.49, subd. 3a(7). Subdivision

3a(7), however, was not discussed by the legislature in 1974 and was not adopted until the No–Fault Act of 1985.

N.W.2d 94, 96 (Minn.1987) (plaintiff injured when an uninsured jeep struck the uninsured motorcycle he was operating); *Gudvangen v. Austin Mutual Ins. Co.*, 284 N.W.2d 813, 817 (Minn.1978) (minor injured while a passenger on an uninsured motorcycle). In the present case, Randy Roering's motorcycle was fully insured and does not qualify as an uninsured or underinsured vehicle under subdivisions 16 or 17. Thus, the general definition of "motor vehicle" contained in subdivision 2 applies in this case and Roering's motorcycle does not qualify as a motor vehicle under that definition. Since Roering was not "occupying a motor vehicle" under Minn.Stat. § 65B.49, subd. 3a(5) at the time of the accident, he is entitled to select any one limit of liability for any one vehicle afforded by a policy under which he is insured. We answer the second certified question in the negative.

## IV.

### *The Grinnell Policy Exclusion*

■ Appellant argues that restrictive language in the Grinnell policy conflicts with the 1985 Minnesota law mandating underinsured motorist coverage and therefore is unenforceable. Donald Roering's policy provides:

This coverage [uninsured motorist/underinsured motorist] does not apply to bodily injury sustained by a person:

(1) while *occupying* a *motor vehicle* owned by *you or a relative* for which insurance is not afforded under this part, or when struck by the *motor vehicle.*

(Emphasis in original). As a result of this exclusionary language, appellant would be unable to obtain coverage under the Grinnell policy. Since Randy Roering's motorcycle was a "vehicle owned by you or a relative" but was not "afforded insurance" under the Grinnell policy, the exclusion would apply and he would not qualify for coverage.

This court has held that contract provisions which conflict with statutory law will not be enforced. *AMCO Ins. Co. v. Lang*, 420 N.W.2d 895, 900 (Minn.1988); *Burgraff v. Aetna Life & Casualty Co.*, 346 N.W.2d 627, 632 (Minn.1984). Under the facts of this case, Grinnell's exclusion would deny appellant coverage guaranteed under the No–Fault Act. The Act provides that:

If at the time of the accident the injured person is not occupying a motor vehicle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

Minn.Stat. § 65B.49, subd. 3a(5). The Grinnell policy language results in an exclusion broader than permitted under the No–Fault Act. Although appellant would be entitled to recover under the Act, the policy exclusion restricts his recovery to accidents occurring with vehicles owned by himself or a relative that are afforded insurance by Grinnell. Such an exclusion conflicts with the coverage guaranteed by the No–Fault Act and is invalid. Therefore, appellant is not excluded from underinsured coverage under Donald Roering's policy. We answer the third certified question in the negative.[3]

Certified questions answered.

COYNE, Justice (dissenting).

I respectfully dissent. I read neither Minn.Stat. § 65B.49, subd. 3a (1988) nor our decision in *Hanson v. American Family Mut. Ins. Co.*, 417 N.W.2d 94 (Minn. 1987), as excluding bodily injury sustained by a motorcyclist from the underinsured motorist coverage afforded by a plan of reparation security insuring an automobile as punishment for the motorcyclist's failure to procure liability insurance on the motorcycle. Both statute and decision, it seems to me, are intended to preclude the transfer of uninsured and underinsured motorist coverage provided in a plan of reparation security from the vehicle de-

---

**3.** The certified question asks broadly whether an exclusion similar to the one in the Grinnell policy is enforceable. We limit our answer to the facts of the present case and the particular exclusion contained in the Grinnell policy.

scribed in that plan to an owned vehicle—regardless whether it has four or fewer than four wheels—which is not described in a plan of reparation security affording uninsured and underinsured motorist coverage.

Like the present case, *Hanson v. American Family Mut. Ins. Co.*, came to this court as a question certified by the United States District Court, District of Minnesota. In that case we answered in the affirmative the question—does Minn.Stat. § 65B.49, subd. 3a(7) (1986), preclude uninsured coverage when the injured claimant is riding an uninsured motorcycle at the time of the injury?—a question almost identical to the first question posed here. In so doing we recognized that the 1985 amendments governing uninsured and underinsured motorist coverage, Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws 1840–42, *codified as amended at* Minn.Stat. § 65B.49, subd. 3a, had overridden the principle adopted in *Nygaard v. State Farm Mut. Auto. Ins. Co.*, 301 Minn. 10, 221 N.W.2d 151 (1974), that uninsured motorist coverage followed the person and not the vehicle. Because the no-fault act "place[d] no geographical limits on coverage and [did] not purport to tie protection against uninsured motorists to occupancy of the insured vehicle," in *Nygaard* and its progeny the court had invalidated policy language designed to exclude from coverage claims for injuries sustained while the insured person occupied an owned but uninsured vehicle. *Id.* at 19, 221 N.W.2d at 156.

In *Hanson*, however, we recognized both the broad policy decision reflected in the 1985 amendments to tie uninsured and underinsured motorist coverage to the particular vehicle involved in the accident and the legislative expectation that the imposition of geographical limitations and the elimination of stacking of coverages would stem rising insurance costs, which the legislature attributed in part to "prior law requiring expansive interpretation of vehicle insurance coverage." *Hanson*, 417 N.W.2d at 96. *See also* Hearing on H.F. 345, Senate Committee on Economic Development and Commerce, 74th Minn.Leg.,

Apr. 16, 1985 (audio tape) (comments of Senator Petty, senate sponsor of the 1985 amendments).

Noting that "[a]llowing a claimant to extend uninsured motorist coverage from an automobile to an owned but uninsured motorcycle runs counter to the thrust of the 1985 legislation," we held in *Hanson* that "Minn.Stat. § 65B.49, subd. 3a(7), precludes uninsured motorist coverage when the claimant at the time of the injury is riding an uninsured motorcycle he or she owns." *Hanson*, 417 N.W.2d at 96.

Our decision in *Hanson* comports not only with the 1985 amendments to the no-fault act, but also with the original legislative treatment of motorcycles in connection with the no-fault act. In February of 1973 when the Minnesota no-fault automobile insurance act was before the legislature, there was a good deal of discussion about the application of the no-fault act to motorcycles. For the most part the discussion revolved around the extremely high cost of first party coverages for a motorcyclist, who usually sustains injury and oftentimes serious injury in any accident involving the motorcycle. The dilemma prompted Senator Jack Davies, one of the chief proponents of the no-fault act, to suggest to the joint conference committee inclusion of a reallocation provision which would provide basic economic loss benefits for a motorcyclist injured in a collision with an automobile by imposing liability for only one-half of those benefits on the insurer of the motorcycle and liability for the other one-half of those benefits on the automobile insurer. That proposal elicited the following response from one of the conferees:

What you're saying is that the motorcyclist only has to take out liability coverage, which they can get at a reasonable rate at the present time, and which I'm in agreement with, but you're also saying that if they have an accident, and normally it's with another automobile, that they're also going to pick up the first party benefits that the automobile driver pays premiums for and which they do not pay premiums for. What you're really doing is giving them all the benefits of

the no-fault bill and they're not paying the premium that the automobile driver has to pay for the same coverage.

Hearing on S.F. 96, Joint Conference Committee Hearing, 73rd Minn.Leg., Feb. 18, 1974 (audio tape).

The Minnesota Automobile Liability Commission, created by the legislature in 1971, considered it obvious from the unfavorable loss statistics involving motorcycles that premium rates would be high and that availability might be restricted, encouraging operation of motorcycles without insurance. Minnesota Automobile Liability Study Commission, Report to the 1973 Legislature, at 86 (1973). Citing the limited availability and high cost of first party benefits for motorcyclists—of the four leading automobile insurance carriers in Minnesota, only one even offered medical payments coverage and that coverage had maximum limits of $500, with a $100 deductible, at an annual premium of $136—a representative of the Minnesota Motorcycle Dealers' Association said that every state that had enacted no-fault automobile insurance legislation had, with one exception (where premiums had risen to a minimum of $900 per year) excluded motorcyclists from its purview. Hearing on S.F. 96, Senate Subcommittee on Commerce and Insurance, 73rd Minn.Leg., April 9, 1973 (audio tape) *and* Minnesota Automobile Liability Study *supra*, at 86 (comments of Gordon Nesvig). While recognizing that the frequent and severe injuries to motorcyclists indicate a need for reparation, the National Association of Independent Insurers, in its statement to the Commission, suggested that the unusual characteristics of motorcycles make first party benefits less important in the case of motorcycles than in the case of automobiles:

> (Motorcyclists) have recognized the extraordinary hazard involved in motorcycle riding and are willing to assume the risk themselves, much as other sports participants do. Moreover, the passenger hazard has not been as much a factor in motorcycle operation as it is in the operation of automobiles and there has been, therefore, less incentive for a motorcyclist to purchase medical payments coverage to protect passengers than there is for the owner of an automobile.

Minnesota Automobile Liability Study, *supra*, at 87.

Ultimately, the motorcyclists prevailed. The Minnesota no-fault automobile insurance act adopted as Laws 1974 ch. 408, § 8, made liability insurance covering the maintenance and use of motorcycles compulsory, Minn.Stat. § 65B.48, subd. 5 (1988), but otherwise exempted motorcyclists from its provisions, an exemption which remains unchanged in the no-fault act as it exists today. It is true, of course, that in *Hanson* the motorcyclist had failed to procure the mandated liability insurance while here there was compliance with the statutory requirement. It is equally true, however, that the absence of statutory mandate does not preclude the inclusion of uninsured and underinsured motorist coverage in the motorcycle liability insurance policy or any other first party coverage. That was the result of an election on the part of plaintiff's decedent—just as the exemption of motorcyclists from all the first party coverages required by the no-fault act was the result of an election by the motorcycling public. To say, as does the majority, that the applicability of section 65B.49, subd. 3a(7) turns on whether the motorcyclist carries a policy of liability insurance is to convert subdivision 3a(7) into a penal statute.

More importantly, whether the owner or operator of a motorcycle is insured or uninsured with respect to liability arising out of the ownership, maintenance or use of the motorcycle is absolutely immaterial to the construction or application of subdivision 3a of section 65B.49. That subdivision addresses uninsured and underinsured motorist coverage only. The requirement in section 65B.49, subd. 3a(7) that an owned vehicle be an insured vehicle in order for the owner to claim uninsured or underinsured motorist coverage serves none of the purposes of the 1985 amendments unless the occupied vehicle is insured with respect to uninsured and underinsured motorist coverage. If, despite the extreme vulnerability

of motorcyclists to injury in the event of accident, motorcyclists are exempted from the obligation to carry uninsured and underinsured motorist coverages because the cost is prohibitive, allowing a claimant to extend uninsured motorist coverage from an automobile to an owned motorcycle uninsured with respect to uninsured and underinsured motorist coverages can hardly be said to advance the legislative intention to stem rising insurance costs. Accordingly, I would answer the first certified question in the affirmative.

The majority responds negatively to the second certified question—under Minn. Stat. § 65B.49, subd. 3a(5), when a person is injured while occupying his own motorcycle which is insured for liability coverage only, is he considered to be "occupying a motor vehicle" for purposes of claims to underinsured motorist benefits? If, as we held in *Hanson*, a motorcyclist is "occupying a motor vehicle" within the meaning of Minn.Stat. § 65B.49, subd. 3a(7) (1988), I fail to see how that same motorcyclist "is not occupying a motor vehicle" within the meaning of Minn.Stat. § 65B.49, subd. 3a(5) (1988). Therefore, I would answer the second certified question in the affirmative.

Finally, for the reasons which prompt me to conclude that a motorcyclist may not look to the underinsured motorist coverage afforded under his automobile plan of reparation security as the source of underinsured motorist coverage for injuries sustained while the cyclist is occupying his or her own motorcycle, I would answer the third certified question in the affirmative. In my judgment an insurance policy exclusion which provides that underinsured motorist coverage does not apply to bodily injury sustained by a person "while occupying a motor vehicle owned by you or a relative for which insurance is not afforded under this part, or when struck by the motor vehicle" is consonant with the public policy underlying the 1985 amendments of the no-fault act and is, therefore, enforceable.

KELLEY, Justice (dissenting).

I join the dissent of Justice Coyne.

SIMONETT, Justice (dissenting).

I join Justice Coyne's dissent.