Timothy R. JOHNSON, Respondent,

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Appellant.

No. C3–95–1051.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Michael A. Stern, Fredrikson & Byron, P.A., Minneapolis, for respondent.

Theodore J. Smetak, Scott H. Rauser, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and RANDALL and NORTON, JJ.

## OPINION

RANDALL, Judge.

Western National Mutual Insurance Company (Western National) challenges the district court's grant of summary judgment in favor of Timothy Johnson. The district court concluded that Johnson, who had already selected the limit of liability from a policy issued by Jefferson Insurance Company of New York (Jefferson Insurance), could in addition select the limit of liability from a policy issued by Western National. We reverse the district court's grant of summary judgment in favor of Johnson because we conclude that under the no-fault law in effect in 1988, Johnson was entitled to select only one limit of liability.

## FACTS

The parties stipulated to the facts. Timothy Johnson was injured when his 1981 Harley Davidson motorcycle was struck by a car driven by Michael Olson. Johnson owned the motorcycle and was the only person riding it at the time of the accident. Michael Olson did not have any liability insurance coverage for himself or his vehicle. Thus, Olson was driving an "uninsured motor vehicle" under Minnesota's No–Fault Act.

At the time of the accident, Johnson had "motorcycle insurance" through Jefferson In-

surance. The Jefferson policy included coverage for uninsured motorist benefits in the amount of $30,000 per person. After the accident, Johnson presented a claim to Jefferson for injuries sustained in the accident. Jefferson paid Johnson $30,000, the uninsured motorist coverage limit under the policy.

In addition to his 1981 Harley Davidson, Johnson owned a 1979 automobile and a 1951 Chevrolet truck. The 1979 automobile and the 1951 Chevrolet truck were insured under a policy issued by Western National. The limit of uninsured motorist benefits under the Western National policy was $50,000 per person.

For purposes of the cross-motions for summary judgment, the parties stipulated that Johnson sustained total damages in excess of $80,000. Insurance has compensated for only $30,000.

The parties also stipulated that the accident of June 24, 1988, was caused entirely by the negligence of Michael Olson and that Johnson is legally entitled to recover damages from Olson for his injuries.

The district court made findings, which the parties do not dispute. The district court found that Johnson was seriously injured, having lost his left leg below the knee, and that Johnson was not seeking duplicate recovery for his loss, and was not seeking overcompensation for his loss.

Both parties moved for summary judgment. The district court granted Johnson's motion for summary judgment and denied Western National's motion. Western National appeals.

## ISSUE

Is an injured driver of a fully insured motorcycle precluded under the no-fault law in effect in 1988 from collecting uninsured motorist benefits from a policy covering motor vehicles in addition to recovering uninsured motorist benefits from a policy covering the motorcycle?

## ANALYSIS

■ A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). Where a case is decided on stipulated facts, the only issue on appeal is whether the district court erred in its application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

■ The accident occurred on June 24, 1988. The law in effect on that date governs the case. The No–Fault Act has a statutory priority scheme for payment of uninsured and underinsured motorist coverage. Minn. Stat. § 65B.49, subd. 3a(5) (1988). The applicable portion of that section provides:

> If at the time of the accident the injured person is not occupying a *motor vehicle,* the injured person is entitled to select any one limit of liability for any one *vehicle* afforded by a policy under which the injured person is insured.

(Emphasis added.)

The term "motor vehicle" is defined by statute and has been construed in case law with respect to motorcycles. *See* Minn.Stat. § 65B.43, subd. 2 (defining "motor vehicle"); *see also Roering v. Grinnell Mut. Reinsurance,* 444 N.W.2d 829, 832–33 (Minn.1989) (construing fully insured motorcycle as not a "motor vehicle").

Although Johnson was driving his motorcycle when the accident occurred, he was not "occupying a motor vehicle" for purposes of the No–Fault Act. Motorcycles are excluded from the general definition of "motor vehicle." Minn.Stat. § 65B.43, subd. 2 (1988). Motorcycles are considered "motor vehicles," however, if the motorcycle is uninsured or underinsured. Minn.Stat. § 65B.43, subds. 16, 17 (1988); *Roering,* 444 N.W.2d at 832–33.

Johnson's motorcycle was insured as required under the No–Fault Act. In fact, it was insured to a greater extent than was required. Johnson's motorcycle was covered by liability, uninsured and underinsured provisions. Therefore, Johnson's motorcycle does not qualify as a "motor vehicle," and was not an "uninsured motor vehicle" or "underinsured motor vehicle." Because

Johnson was not "occupying a motor vehicle" under Minn.Stat. § 65B.49, subd. 3a(5) at the time of the accident, he was entitled to select any one limit of liability for any one "*vehicle*" afforded by a policy under which he was insured. *See* Minn.Stat. § 65B.49, subd. 3a(5) (1988); *Roering*, 444 N.W.2d at 833.

■ The act does not define "vehicle." *Black's Law Dictionary* defines "vehicle" as "[t]hat in or on which persons, goods, etc. may be carried from one place to another, especially along the ground." *Black's Law Dictionary* 1393 (5th ed. 1979). This definition includes motorcycles. The No–Fault Act provides further support for construing the term "vehicle" in section 65B.49, subdivision 3a(5) to include motorcycles. The No–Fault Act defines a motorcycle as "a self-propelled *vehicle* designed to travel on fewer than four wheels * * *." Minn.Stat. § 65B.43, subd. 13 (1988) (emphasis added). Therefore, the legislature's use of the term "vehicle" in section 65B.49, subdivision 3a(5), stating "any one limit of liability for any one *vehicle* * * *," includes within its meaning a policy on a motorcycle.

■ Effective August 1, 1990, the legislature amended the No–Fault Act and partially overturned *Roering*. Under the 1990 amendment, an owner of a motorcycle who is injured while occupying that motorcycle may only look to uninsured or underinsured benefits purchased for that motorcycle. 1990 Minn.Laws Ch. 504; Minn.Stat. § 65B.49, subds. 3a(5), 3a(8) (1990). This 1990 amendment changed the result in *Roering* only to the extent that the injured motorcycle owner, instead of being entitled under subdivision 3a(5) to select any one limit of liability for any one vehicle afforded by a policy under which the owner is insured, the owner under Minn.Stat. § 65B.49, subd. 3a(8) (1990), would only be entitled to seek uninsured or underinsured benefits afforded by a policy for the motorcycle under which the owner is insured. *See* Minn.Stat. § 65B.49, subd. 3a(8).

The 1990 amendment does not change the holding in *Roering* that the owner of a fully insured motorcycle is not "occupying a motor vehicle" for purposes of the statute. If the 1990 amendment applied to this case, it would entitle Johnson to seek uninsured or underinsured benefits only from the Jefferson Insurance policy covering his motorcycle. Because this action accrued prior to the effective date of the 1990 amendment, the prior statute and the holding in *Roering* apply, and Johnson was entitled to select any one limit of liability for any one "vehicle" afforded by a policy under which he was insured.

Although the amendment does not apply to this case, Johnson argues it is helpful to clarify that he is entitled to select both the policy limits under the Jefferson Insurance policy and the Western National policy. Western National does not dispute that Johnson would have been entitled to select the policy limit of $50,000 in the Western National policy. Western National argues that, although entitled to select the larger $50,000 limit in its policy, Johnson selected the lower $30,000 limit in the Jefferson Insurance policy. Having done so, Western National argues, Johnson should not now be able to select the policy limits in its policy as well. We agree.

■ Under Minn.Stat. § 65B.49, subd. 3a(5) (1988), and *Roering*, Johnson was not "occupying a motor vehicle" at the time of the accident. Therefore, he was entitled to "select any one limit of liability for any one *vehicle* afforded by a policy under which [he was] insured." Minn.Stat. § 65B.49, subd. 3a(5) (1988) (emphasis added). Johnson selected the policy limit of $30,000 from the Jefferson Insurance policy. Having selected his "one limit of liability" from one "vehicle," the statute expressly states he may not select a second limit of liability in addition to the first limit of liability.

■ Minnesota law does not permit stacking UM or UIM benefits unless the parties contract for that right. Minn.Stat. § 65B.49, subd. 3a(6) (1988); *Davis v. American Family Mut. Ins.*, 521 N.W.2d 366, 371 (Minn.App. 1994); *Austin Mut. Ins. v. Templin*, 435 N.W.2d 584, 587 (Minn.App.1989), *review denied* (Minn. Apr. 24, 1989). Subdivision 3a(6) provides:

> Regardless of the number of policies involved, *vehicles* involved, persons covered, claims made, *vehicles* or premiums shown on the policy, or premiums paid, in no

event shall the limit of liability for uninsured and underinsured motorist coverages for two or more *motor vehicles* be added together to determine the limit of insurance coverage available to an injured person for any one accident.

(Emphasis added.)

The district court concluded that the Western National policy did not exclude coverage and that the statutory anti-stacking language did not apply to this case because it only applies to the adding together of uninsured or underinsured coverage for two or more "motor vehicles." *See* Minn.Stat. § 65B.49, subd. 3a(6). The district court found that here there was a policy covering two "motor vehicles" and a policy covering a non-"motor vehicle."

The term "vehicle" is also used together with the term "motor vehicle" in section 65B.49, subdivision 3a(7) (1988). That section provides that the uninsured and underinsured motorist coverages required under the No–Fault Act do not apply to bodily injury of the insured "while occupying a *motor vehicle* owned by the insured, unless the occupied *vehicle* is an insured *motor vehicle*." (Emphasis added.)

While the No–Fault Act is not entirely consistent in its use of the term "vehicle," subdivision 3a(5) unambiguously states that the injured party not "occupying a motor vehicle" is entitled to select any one limit of liability for any one "vehicle." We do not read "vehicle" as used in subdivision 3a(5) as meaning only "motor vehicle," although in other sections of the No–Fault Act that may be the case.

Therefore, unless there was a contractual stacking provision (the parties agree there was not), Johnson may select only one limit of liability. Johnson makes no claim to "stacked" coverage. Thus, because there was no stacking, and because subdivision 3a(5) entitles the injured party to look to the limit of liability from coverage for one "vehicle," we conclude the district court erred in allowing Johnson to select uninsured motorist benefits from the Western National policy in addition to uninsured motorist benefits from the Jefferson policy.

Having decided that Johnson is not entitled to the policy limits of both Jefferson and Western National, there remains the issue of whether the law precludes Johnson from tendering the $30,000 in uninsured motorist benefits (already received) from the Jefferson policy to Western National and then selecting the greater limit of $50,000 in uninsured motorist benefits payable under the Western National policy.

We need not decide this issue. Western National's attorney stipulated at oral argument on the record that if our decision was a reversal in favor of Western National, his client would, as a matter of equity, allow Johnson to tender the $30,000 limit under the Jefferson policy to Western, and select Western's $50,000 limit. We take Western National's attorney at his word.

### DECISION

The district court erred in concluding Johnson was entitled to select the limit of liability from the Western National policy in addition to the limit of liability from the Jefferson Insurance policy. Johnson is entitled to tender his $30,000 received from Jefferson to Western National in return for Western's higher limit.

**Reversed.**