Fourth Division
February 14, 2008

No. 1-06-1999

| | | |
|---|---|---|
| PROGRESSIVE INSURANCE COMPANY a/s/o Mervin Thomas, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05 M1 018543 |
| FREDRICK WILLIAMS, | ) ) ) | Honorable Wayne D. Rhine, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

The plaintiff, Progressive Insurance Company (Progressive), as subrogee of Mervin Thomas (Thomas), filed a complaint against the defendant, Fredrick Williams, alleging that Williams' negligent operation of a motor vehicle caused injuries to Thomas on March 5, 2004. The defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) and alleged, among other things, that Progressive was not a bona fide subrogee. 735 ILCS 5/2-619(a)(9) (West 2006). In a July 13, 2006 order, the trial court granted the defendant's motion and dismissed the plaintiff's complaint with prejudice.

Progressive presents two issues for review: (1) whether the defendant has standing to challenge plaintiff's contractual right to seek subrogation where he has no legally cognizable interest in the insurance contract between Progressive and Thomas; and (2) whether plaintiff's subrogation action is barred by a provision in Minnesota No-Fault Automobile Insurance Act (Minnesota

Act)(Minn.Sta.Ann. §658.41 <u>et</u> <u>seq</u>. (West 2005)). For the reasons stated herein, the trial court's July 13, 2006, order is affirmed.

## BACKGROUND

On March 5, 2004, Progressive was a reciprocal insurance exchange organized and existing under the laws of Cook County, Illinois. Progressive was also doing business in the state of Minnesota. On March 5, 2004, an automobile accident occurred in Chicago, Illinois, involving Thomas, a Minnesota resident, and Williams, an Illinois resident. Pursuant to the insurance policy Progressive issued in Minnesota to Thomas and as a result of the injuries Thomas suffered in the March 5, 2004, accident, Progressive paid medical bills and economic losses totaling $19,640.

On September 13, 2005, Progressive, as the subrogee of Thomas, filed a complaint in the circuit court of Cook County, Illinois. Progressive alleged in its complaint that it had paid $19,460 in medical payments and economic losses to Thomas, its insured, pursuant to the terms of its insurance policy with Thomas. Progressive also alleged that, as a result of its insurance contract and its payments on behalf of Thomas, it was the <u>bona</u> <u>fide</u> subrogee of "any and all rights" that its insured had against Williams arising from the March 5, 2004, accident. Progressive recited a provision from its insurance contract with Thomas in its complaint. See 735 ILCS 5/2-606 (West 2006).[1] The provision states:

"OUR RIGHTS TO RECOVER PAYMENT

---

[1] Section 2-606 provides "[i]f a claim or defense is founded upon a written instrument, a copy thereof, or of so much of same as is relevant, must be attached to the pleading as an exhibit or recited therein." 735 ILCS 5/2-606 (West 2006).

In the event of any payment under this policy, we are entitled to all the rights of recovery that the insured person to whom payment was made has against another."

Therefore, as the bona fide subrogee of Thomas, Progressive alleged that it was entitled to sue and to recover the $19,460 it paid Thomas because of Williams' negligence in operating his automobile on March 5, 2004.

On January 31, 2006, Williams filed a motion to dismiss pursuant to section 2-619(a)(2) and (a)(9) of the Code. 735 ILCS 5/2-619(a)(2),(a)(9) (West 2006). Plaintiff filed a response to the motion to dismiss and Williams filed a reply to the defendant's motion to dismiss. On April 27, 2006, the trial court granted Williams' motion to dismiss Progressive's complaint with prejudice stating:

"Plaintiff Progressive's right to subrogation is pursuant to it's [*sic*] policy of insurance and the policy of insurance is a contract. All contracts are pursuant to the state in which they are made, in this matter the contract of insurance was made in MN. It is clear under MN law that Progressive has no right to subrogation and limited to the laws of MN. The Court has granted and gives full faith and credit to MN law and therefore applies MN law to this matter, [*sic*] even though the accident occurred in Illinois."

On May 8, 2006, Progressive filed a motion to reconsider and argued that the Minnesota Supreme Court's holding in Nodak Mutual Insurance Co. v. American Family Mutual Insurance Co., 604 N.W.2d 91 (Minn. 2001), was factually similar and should control the disposition of the motion to dismiss in the trial court. On June 15, 2006, Williams responded to the motion to dismiss reiterating

his argument that Progressive had no right of subrogation under Minnesota or Illinois law. On July 13, 2006, the trial court denied Progressive's motion to reconsider and re-entered it's April 27, 2006, order verbatim.

## STANDARD OF REVIEW

In this case, the trial court granted a section 2-619 motion to dismiss. Trial court orders granting section 2-619 motions to dismiss are reviewed de novo. Karris v. US Equities Development, Inc., 376 Ill. App. 3d 544, 549 (2007), citing Williams v. Davet, 345 Ill. App. 3d 595, 598 (2003). When ruling on such motions to dismiss, "the trial court must interpret all pleadings and supporting documents in the light most favorable to the non[-]moving party" and "the court should grant the motion if the plaintiff can prove no set of facts that would support a cause of action." Rodriguez v. Sheriff's Merit Comm'n, 218 Ill. 2d 342, 349 (2006). "A reviewing court may sustain the decision of a lower court on any grounds which are called for by the record regardless of whether the lower court relied on those grounds and regardless of whether that court's reasoning was correct." In re Estate of Funk, 221 Ill. 2d 30, 86 (2006).

## ANALYSIS

The trial court granted the defendant's section 2-619 motion to dismiss; therefore, we review this matter de novo. Karris, 376 Ill. App. 3d at 549, citing Williams v. Davet, 345 Ill. App. 3d 595, 598 (2003). Instead of filing a motion to strike the unverified complaint, because section 2-403 of the Code requires subrogation complaints to be filed under oath (735 ILCS 5/2-403(a), (c)(West 2006)), the defendant filed a section 2-619 motion asserting that Progressive either "does not have legal capacity to sue" (735 ILCS 5/2-619(a)(2)(West 2006)) or that Progressive's claim "is barred by other

affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(2), (9) (West 2006)).  Although the parties made conflict of law arguments in the trial court and renewed and extended those arguments on appeal, the threshold question we must answer is whether Williams has statutory authority to challenge Progressive's complaint.

I.    Statutory Authority to Challenge Defective Pleadings

Progressive argues that Williams, the defendant, lacks standing to challenge his contract with its insured, Thomas.  Progressive is challenging Williams' right to file a motion to dismiss its subrogation complaint.  Specifically, Progressive is sub silencio arguing that Williams does not have a right to file a section 2-619 motion to dismiss.  735 ILCS 5/2-619 (West 2006).

It is axiomatic that where the Code of Civil Procedure prescribes a procedure that defendants may use to challenge defective pleadings, plaintiffs cannot foreclose their opponents from availing themselves of such procedures.  735 ILCS 5/2-601 et seq. (West 2006).  Article II, part 6, of the Code prescribes the procedure that defendants are to follow when they want to challenge defective complaints.  735 ILCS 5/2-601 et seq. (West 2006).  Section 2-619 of the Code expressly empowers defendants in any civil action to file, as Williams did in this case, a motion to dismiss a plaintiff's complaint if the plaintiff lacks standing or if the plaintiff does not have the legal capacity to sue.  735 ILCS 5/2-619(a)(2), (a)(9) (West 2006); see Redwood v. Lierman, 331 Ill. App. 3d 1073, 1076 (2002), citing Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 484-86 (1994) (discussing the differences between section 615 and section 619 motions to dismiss and noting that a motion to dismiss under section 2-619 raises defects or defenses that negate the cause of action). This court is unwilling to find that a defendant cannot do what the Code expressly empowers it to do.  735 ILCS 5/2-619(a)(2), (a)(9)

(West 2006). Therefore, we hold that the Code makes it clear that Progressive's argument challenging Williams' right to file a section 2-619 motion to dismiss lacks merit. 735 ILCS 5/2-619(a)(2), (a)(9) (West 2006).

## II. Standing to Sue as Subrogee

The defendant specifically argued that Progressive had no standing to bring a subrogation action based upon its insurance contract, which was issued in Minnesota to Thomas, who was, at all pertinent times, a Minnesota resident. Standing is a party's legal right to make a legal claim or seek judicial enforcement of a duty or right. In re Marriage of Rodriguez, 131 Ill. 2d 273, 280 (1989). Progressive maintains that the provision in its insurance policy with Thomas gives it a contractual right or standing to prosecute a subrogation action in Illinois pursuant to section 2-403 of the Code. Illinois law is clear (1) that the validity, construction and obligations of a contract are governed by the law of the place where it is made, (2) that the law of the place becomes a part of the contract, and (3) that courts of another jurisdiction will so interpret its legal effect. Harris v. American Surety Co.of New York, 372 Ill. 361, 363-64 (1939), citing Frankel v. Allied Mills, Inc., 369 Ill. 578, 582 (1938) and Walker v. Lovitt, 250 Ill. 543, 546 (1911); accord AMCO Insurance Co. v. Lang, 420 N.W.2d 895, 898 (Minn.1988) (Minnesota law applies to all insurance policies providing benefits for injuries arising out of the use of a motor vehicle that are executed, issued or renewed in Minnesota). Because Progressive's contract with Thomas was made in Minnesota and because Minnesota law became a part of the contract, this court, as a court of another jurisdiction, will construct Progressive's contract based upon Minnesota law. Harris, 372 Ill. at 363-64, citing Frankel, 369 Ill. at 382; Lovitt, 250 Ill. at 541.

The Minnesota Supreme Court has held "that contract provisions which conflict with statutory law will not be enforced." Roering v. Grinnell Mutual Reinsurance Co., 444 N.W.2d 829, 833 (Minn.1989). If the contract provision Progressive references and relies upon in its complaint is unenforceable because it conflicts with Minnesota's statutory law, Progressive does not have a contractual right to be a subrogee that can be enforced in Illinois's courts.

It is undisputed that the insurance provision at issue in this case is a Minnesota automobile insurance provision that was in Thomas's policy and the insurance contract was issued in Minnesota to a Minnesota resident. It is also undisputed that Progressive's subrogation complaint references and recites a provision in its Minnesota policy in order to establish its right or standing to file a subrogation action in Illinois pursuant to the provisions of section 2-403 of the Code. In order to determine whether the contract provision Progressive relies upon confers standing on the insurer and entitles the insurer to act as Thomas' subrogee under Illinois law, we examine the Minnesota Act (Minn. Stat. Ann. §65B.41 et seq. (West 2005)) and Minnesota decisions construing the Minnesota Act. Bellmer v. Charter Security Life Insurance Co., 140 Ill. App. 3d 752, 755 (1986), citing Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App. 2d 503, 513 (1956); and 44 C.J.S. Insurance §302, at 1214-16 (1945).

We note that subdivision 2 of the Minnesota Act provides that the "right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss." Minn. Stat. Ann. §65B.53, subd. 2 (West 2005). Subdivision 3 provides that "[a] reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim

based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss. " Minn. Stat. Ann. §65B.53, subd. 3 (West 2005). Subdivision 6 provides that "[n]o reparation obligor shall contract for a right of reimbursement or subrogation greater than or in addition to those permitted by this chapter." Minn. Stat. Ann. §65B.53, subd. 6 (West 2005). The Minnesota Act was last amended in 1993, and we note that the provisions cited above were effective when the contract provision Progressive referenced and recited in its complaint was made. Finally, we note that the statutory provisions in the Minnesota Act control the legal effect, if any, of the contract provision recited in Progressive's complaint. AMCO Insurance Co. v. Lang, 420 N.W.2d 895, 898 (Minn.1988); Bellmer, 140 Ill. App. 3d at 755, citing Konrad, 11 Ill. App. 2d at 513, and 44 C.J.S. Insurance §302, at 1214-16 (1945).

In Minnesota, contract provisions that conflict with statutory law are not enforced; therefore, this court cannot enforce the contract provision recited in Progressive's complaint if it conflicts with Minnesota law. Roering, 444 N.W.2d at 833, citing AMCO, 420 N.W.2d at 900; Burgraff v. Aetna Life & Casualty Co., 346 N.W.2d 627, 632 (Minn. 1984). Minnesota's highest court has construed the no-fault insurance act at issue herein and held that when the Minnesota Act was enacted the Minnesota legislature clearly limited a no-fault insurer's right to recover benefits it paid to those cases in which insureds recovered duplicate benefits from tortfeasors. Milbrandt v. American Legion Post, 372

N.W.2d 702, 705 (Minn. 1985). More recently, in State Farm Mutual Automobile Insurance Co. v. Great West Casualty Co., 623 N.W.2d 894, 898 (Minn. 2001),the Minnesota Supreme Court held that the provisions of the Minnesota Act (Minn. Stat. Ann. §65B.41 et seq. (West 2005)), should not be construed in isolation from each other. The right of subrogation provided by the Minnesota Act (subdivisions 2 and 3) exists only to the extent that the recipient of basic economic loss benefits would otherwise receive a double recovery. American Family Mutual Insurance Co. v. Vanman, 453 N.W.2d 48, 50 (Minn. 1990).

In the case under review, we note that Progressive's complaint does not allege that Thomas, its insured, has received or will receive a duplicate or double recovery. Following Minnesota case law interpreting the Minnesota Act that is at issue in this case, we find that Progressive's contract provision creates a "right of reimbursement or subrogation greater than or in addition to those permitted by" subdivision 6 of the Minnesota Act. Minn. Stat. Ann. §65B.53, subd. 6 (West 2005). We find that the policy provision that Progressive recites (1) to confer standing and (2) to establish that it is a subrogee, conflicts with the Minnesota Act because the recited policy provision would permit Progressive to recover payments made to Thomas without Thomas receiving a double recovery. Specifically, Progressive's Minnesota policy provision grants the insurer greater rights than those codified in subdivision 6 of the Minnesota No-Fault Automobile Insurance Act. Minn. Stat. Ann. §65B.53, subd. 6 (West 2005). Because provisions in Minnesota contracts that conflict with Minnesota's statutory law are not enforceable, the provision recited in Progressive's policy with Thomas is unenforceable. Roering, 444 N.W.2d at 833. Accordingly, Progressive does not have an

enforceable contract right that it can use to establish standing so that the insurer can become a <u>bona fide</u> subrogee and prosecute a subrogation action pursuant to section 2-403 of the Code. 735 ILCS 5/2-403(a) (West 2006).

Finally, Progressive maintains that <u>Nodak</u> should be followed by this court when it decides this case. In <u>Nodak</u>, the Minnesota Supreme Court held that North Dakota's no-fault law, not Minnesota's no-fault law, applied in a case involving an accident that occurred in North Dakota between a Minnesota resident and a North Dakota resident. <u>Nodak</u>, 604 N.W.2d at 94-97. We note, however, that the <u>Nodak</u> court did not address the two issues presented in this case: (1) the issue of standing; and (2) the issue of whether a Minnesota insurer has a right to file a subrogation action based upon a provision in a Minnesota insurance policy that conflicts with Minnesota's No-Fault Automobile Insurance Act. We find <u>Nodak</u> inapposite because it failed to address the aforementioned issues. Accordingly, we hold that <u>Nodak</u> does not provide support for Progressive's position.

CONCLUSION

In conclusion, because Progressive's contract provision with its insured conflicts with Minnesota's No-Fault Automobile Insurance Act (Minn. Stat. Ann. §65B.41 <u>et</u> <u>seq</u>. (West 2005)) and is therefore unenforceable, Progressive is not a <u>bona</u> <u>fide</u> subrogee as required by section 2-403(a) of the Code. Therefore, Progressive cannot prosecute this subrogation action, and the trial court's July 13, 2006, order dismissing this case with prejudice is affirmed.

Affirmed.

O'BRIEN, J., and MURPHY, J., concur.

1-06-1999